TOWNSHIP BOARD OF TRIPLETT TOWNSHIP, Chariton County, Missouri, at the Relation and to the Use of CHRIS FEITZ, Appellant, v. F. R. McPHEARSON, F. A. RHINE, STEWART HENDERSON and E. A. ROBERTSON, Respondents.

Kansas City Court of Appeals, June 2, 1913.

1. PUBLIC ROAD: Dedication. Where landowners, desiring to give a road for public use, set their fences back leaving a strip open for road purposes and thereafter maintain their fences along their respective sides, on the lines adopted by

172 App.—24

them, for a time in excess of the limitation period, such act is a dedication *in pais* or by implication of the land so opened, and needs neither written nor oral words to create it.

2. ———: ———. Where landowners dedicate by implication land for a public road by setting their fences back a reasonable distance and continuously maintain them at that line thereafter, such act, in the absence of anything to show an intention to dedicate a lesser or narrower strip, is a dedication of the land clear up to the line of fence maintained, and their successors in title cannot afterwards claim a portion of said roadway merely because the public has not seen fit to use or improve the entire width of the right of way.

3. ———: ———: **Extent of Ownership by Public.** Where landowners have thus by their acts dedicated land for use as a public road, and the same is accepted and travelled by the public, the ownership of the public extends from one fence to the other and the public is not required to actually travel over and improve every inch of it in order to be entitled to the full width of the right of way.

4. **TRIAL: Right to Jury.** The right of a litigant to have a jury pass upon the questions of fact involved in his case is an important one and must not be infringed or encroached upon in the slightest degree. If a single point in the case rests upon a disputed question of fact, then it is error to direct the jury to return a particular verdict. If, however, all the facts are conceded necessary to enable the court to apply the law, leaving nothing but the law to be determined, then no issue is left for the jury, and a directed verdict is proper.

Appeal from Chariton. Circuit Court.—*Hon. Fred Lamb,* Judge.

AFFIRMED.

*S. A. Davis* and *Jones & Conkling* for appellant.

The court erred in directing a verdict for defendants. Whether or not the strip of land in controversy had been dedicated to the public for road purposes, or whether it had become a part of the road by user, was a question of fact for the determination of the jury. Benton v. City of St. Louis, 217 Mo. 687; Moore v. Hawk, 57 Mo. App. 495; State v. Hood, 143 Mo.

App. 313; Landis v. Hamilton, 77 Mo. 554; McShane
v. City of Moberly, 79 Mo. 45; Elliott on Roads and
Streets (4 Ed.), secs. 153, 157, 167.

*J. A. Collet* for respondents.

As the evidence offered by appellant showed con-
clusively that the plowing and grading complained of
was done by the road overseer and on land that had
been a part of a public highway for more than forty
years, the court properly directed a verdict for re-
spondents. State v. Feitz, 154 Mo. App. 578; State v.
Thompson, 91 Mo. App. 329.

TRIMBLE, J.—Relator Feitz, as the owner of
forty acres of land adjoining the public road in Trip-
lett township, Chariton county, Missouri, sues on the
bond of F. R. McPhearson as road overseer of district
No. 1 of said township, for wrongfully entering upon
relator's land along the highway, plowing and grad-
ing the same and destroying a few rows of potatoes
planted there.

The county road runs along the north side of re-
lator's farm. It was not established, with definite
boundaries or of prescribed width, by regular pro-
ceedings in the county court, but simply by the owners
of the land on either side of the highway line setting
back their fences leaving a strip of land for a road,
thereby dedicating same for use as a public highway.
This fact must be borne in mind as it is an important
and distinguishing feature in this case.

The highway thus established had existed for forty
years or more, and the owners who at first estab-
lished or gave the road marked out the north and south
boundaries thereof by planting hedge fences along
their respective sides. It seems that the entire width
of the strip between the two hedges was sixty feet.
The actually used roadway, that is, the wagon tracks,

in that portion of the road adjoining relator's land, went north of the center of this strip and ran closer to the north hedge than it did to the south. Constant use for so many years had worn the track down lower than the adjoining land on either side, so that between the relator's hedge and the actually used roadway was a "bank" or strip of ground higher than the road track and which had grown up in brush, trees, etc. This strip was about fifteen feet in width. On this strip a line of telephone poles had been set and thereafter used. These poles were from two to four feet north of relator's hedge.

In the latter part of 1908, relator, having cleared said strip of the brush and trees thereon, pulled up his hedge and erected a fence outside of that line so as to include the said strip. His idea was, and is now, that his land extended north up to that part of the roadway actually used by the public; that, notwithstanding the fact that his predecessor in title, many years before, had opened the road by setting back his fence and had continuously maintained his hedge as the only boundary marking the south line of the road, yet, since the public had not actually used the strip immediately north of his fence by traveling upon it nor graded it down for use, this left the land to him, and the public had no rights beyond the few feet actually trod upon in going over it. That this was his idea in the present case is shown by the following testimony given by him:

"Q. Your idea was that he (the overseer) was only entitled to forty feet? A. He was entitled to what they had in use so far as they worked it and used it.

"Q. That he was entitled to what they actually had in use and that you were entitled to farm up to the used portion of the road? A. I claimed I was entitled as far as my land run that wasn't in actual use.

"Q. That is, you say, that if you owned the land on the south side of the road, you were entitled to farm up to the traveled part? A. I claimed the land up to the road, up to the south ditch.

"Q. Now then, you base that upon the fact that they were not actually traveling on that bank? A. Yes.

"Q. That is what you meant when you told him to stay within his limits? A. Yes.

"Q. That he wasn't to get any further on your side than the actual traveled road? A. That had actually been worked."

It was with this same idea in mind that he built the fence out so as to include this strip in 1908 as mentioned above. Upon doing so he was indicted, tried and convicted of obstructing the public highway. The case was appealed to this court and the conviction affirmed. [State v. Feitz, 154 Mo. App. 578.]

Defendant McPhearson, the road overseer, desiring to work the road at said point and to widen the travelled portion, removed the fence erected out on this strip or bank and graded down the north portion of said strip in, in doing so, plowed up some potatoes relator had planted thereon. For these acts relator brings this suit.

At the close of plaintiff's testimony the court sustained a demurrer to the evidence, and this is the sole error complained of here.

Relator's right to have a jury pass upon his case is a vital and important one, and cannot be encroached upon in the slightest degree. If, therefore, a single point involved in the decision of the case in favor of defendant rests upon a disputed question of fact, then it was error to direct the jury to return a particular verdict.

There was no dispute over the fact that the road had been established as a public road in the manner hereinbefore indicated, that is, by the owners merely

setting their fences back to a certain line on each side and allowing the road to become such by dedication *in pais* or by limitation. Nor was there any dispute over the fact that the strip thus opened for a road and the use by the public of a roadway thereover had existed continuously for more than forty years. If now it is conceded that the ground actually entered upon by the overseer was within the limits of the strip of land thus given to the public by acts *in pais,* then there was no question for the jury to deliberate upon or settle. Strictly speaking, the roadway, not the mere width of the wagon tread but the entire right of way from property line to property line, was established by means of an implied dedication. Such arises by operation of law from the acts of the owner. It may exist without any express grant, and need not be evidenced by any form of words oral or written. If the landowner's acts are such as indicate an intention to devote the land to public use, then upon acceptance by the public, the dedication becomes complete. [Elliott on Roads and Streets (3 Ed.), sec. 137.] When, therefore, relator's predecessor in title drew his fence back to a certain line leaving a strip to be used as a public road and the public began to use it as such and the authorities to work it, this was sufficient to make it a public road. And the acts of the owner in drawing his fence back to a certain line and maintaining it thus for a time far beyond the limitation period shows an intention to dedicate the entire strip or portion of his land thus thrown open, especially where the entire strip thus left open is not unreasonably wide for road purposes. In this case it was about sixty feet from fence to fence. In such case, nothing to the contrary appearing, such act of the owner will be held to be an implied dedication of the ground up to the line indicated by the boundary he has himself established. And the public in such case is not required to actually work and travel every inch

of it up to such boundary in order to have the roadway that wide. Its rights are not restricted to the particular part traveled. [State v. Thompson, 91 Mo. App. 329.] In the case before us there was nothing to show an intention to dedicate any lesser strip than that extending clear up to the hedge fence. In this respect the case differs from Moore v. Hawk, 57 Mo. App. 495, relied upon by relator. There the property owner set his fence back fifteen feet in order to dedicate one-half of a thirty foot roadway, and then built a hedge from five to ten feet inside of the other fence and that much on his land, as a windbreak for his stock. Afterwards the outside fence rotted down and he used the hedge as the fence. It was held that he had not dedicated more than to the first fence erected, and consequently the hedge could not be said to be on the line of the highway. If that were the case here, if the former landowner had by any act indicated an intention to dedicate a strip of lesser extent than to the hedge, then the land south of such indicated line would belong to relator even though unfenced for many years, since, in the absence of actual user, the public would obtain no rights beyond the line first established.

It is in evidence that the former landowner, relator's predecessor in title, at one time had a rail fence outside and north of the hedge set by him, and that this rail fence long ago rotted down and has disappeared. If there were any question of whether the land entered upon by the road overseer was inside of this old rail fence, then it would be necessary to submit the issue involved to the jury. But during the trial relator, while on the stand, admitted that the land entered upon was still north of even that fence. During his cross-examination the following occurred:

"Q. This bank you are claiming as yours and undertook to take possession of, all of it, every part of it was north of the hedge? A. It was north of the hedge.

"Q. There were the remnants of an old rail fence there just outside of the hedge? A. I never seen the fence, but I found considerable rails.

"Q. You found the evidence of it, the remnants of it just outside of the hedge? A. Yes, sir.

"Q. This was still north of these old rails, wasn't it? A. What?

"Q. This land we are talking about? A. *It was right north of it.*"

When relator said this he admitted away the last vestige of his right to have the case submitted to a jury. There was, after that, no disputed question to settle except one of law which was entirely for the court.

In addition to this, relator admitted that the telephone line running along the road had its poles set north of the hedge and that the road overseer came down south to within six inches of these poles but not beyond them. The setting of these telephone poles was some slight evidence that the ground where they were located was regarded as being right of way and not private property, and used as such. A careful examination of the entire record convinces us that no right of relator was abused or infringed upon in taking the case from the jury.

The judgment is, therefore, affirmed. All concur.