C. B. LEAVEL, Appellant, v. HARRISON JOHNSTON, JR., Respondent.

Kansas City Court of Appeals, June 13, 1921.

1. **APPEAL AND ERROR: New Trial: Motion for New Trial, Granted Without Reasons Stated, Assumed to be on Ground Verdict was Against Weight of Evidence.** Where one of the grounds for new

Leavel v. Johnston.

trial set forth in the motion was that verdict was against weight of evidence, that will be assumed to be the reason for the granting of the motion, the court having failed to assign a reason for granting the new trial.

2. ———: ———: Trial Court May Grant One New Trial to Each Party: Appellate Court Will Not Disturb, Unless Clearly Contrary to the Evidence. The granting of a new trial by the trial court will in no case be disturbed by the appellate court unless the evidence is such that no verdict in favor of the party to whom a new trial is granted would be allowed to stand.

3. ———: Weight of Evidence: Weight of Evidence Exclusively for Trial Court. Weight of the evidence is exclusively within the province of the trial court.

4. Chattel Mortgage: Usury: Liens: Chattel Mortgage, Securing Usurious Loan, Void. A chattel mortgage given to secure a loan for which a usurious rate of interest is charged is void under section 6496, Revised Statutes 1919.

5. USURY: Promissory Note: Loan: Whether Transaction is Usurious, Question for Jury. Where a note for $18 was given at the same time a loan was procured for a larger amount, and the $18 if it were interest would have constituted the loan a usurious one, the question as to whether the $18 note was a part of the transaction is a question for the jury.

6. ———: ———: ———: Note Given for Separate Service Does not Make Loan Made at Same Time Usurious. An $18 note given as collateral, to secure a loan for which the full legal rate of interest was exacted, does not make the loan usurious if the $18 note was given for a separate service, and not for making loan.

7. PAWNBROKERS: Statutes: Construction: No License Required Un-Casey Act Where Money Loaned, Secured by Liens on Chattel, is at Legal Rate of Interest. The Casey Act, (Sec. 8811, R. S. 1919), requiring a license, in cities of a certain size, and declaring that any person who, either as principal or agent, engages in the business of lending money and taking as security a lien upon personal chattels, is engaged in the chattel loan business, is modified by section 8810, Revised Statutes 1919, and applies only to persons or agents lending money for more than legal rate of interest.

8 USURY: Statutes: Usurious Rate of Interest Does Not Invalidate Promissory Note. A rate of interest which is usurious does not invalidate a promissory note, it being valid under section 6496, Revised Statutes 1919, for the principal and legal rate of interest, although the security is void.

9. EVIDENCE: Appeal and Error: Trial Court to Determine Whether Undisputed Evidence Should be Believed. Where the evidence is undisputed, the belief to be given it, is for the jury, not for the appellate court.

10. APPEAL AND ERROR: New Trial: Failure to Specify Reasons for Granting New Trial Not Reversible Error. Where the trial court grants a new trial without specifying reasons, as required by section 1454, Revised Statutes 1919, while a violation of duty, does not constitute reversible error.

11. REPLEVIN: Possession: Possession by Defendant Essential in Replevin and Determined by Reference to Time Action is Instituted. Possession by the defendant is a necessary requisite to the commencement of a replevin suit and is determined by reference to the time the action is instituted, not by reference to the time the writ is served.

12. PROCESS: Pleading: Sheriff's Return Showing Possession and Defendant's Answer Admitting Same, Conclusive as to Defendant on Question of Possession. Where the sheriff's return showed, and the defendant's answer admitted possession, the proof is conclusive on defendant.

13. CHATTEL MORTGAGES: Replevin: Chattel Mortgagee, Condition Having Been Broken, can Take Possession or Replevin the Mortgaged Property Wherever he May Find it. The owner of a chattel mortgage after condition broken may replevin the mortgaged property or take possession of it wherever he may find it as his own property.

14. REPLEVIN: Inconsistent Defense: A Defense on the Theory that Defendant Did Not Have Possession of Property is Inconsistent With a Demand by Defendant for Judgment for Return of Property or Its Value. It would be inconsistent for defendant, after demanding a judgment for the return of mortgaged property, or value thereof, to predicate a defense upon want of possession of the property in him at the time of the commencement of suit, as the mortgagee, after condition broken, was entitled to take possession or replevin mortgaged property wherever found.

Appeal from the Circuit Court of Jackson County.—*Hon. Daniel E. Bird,* Judge.

AFFIRMED.

*Ira S. Gardner* and *C. S. McLane* for respondent.

*Stewart Taylor* and *Ball & Ryland* for appellant.

BLAND, J.—This is a suit to replevin an automobile. There was a trial before the court without the aid of a jury resulting in a judgment for paintiff. The court thereafter sustained defendant's motion for a new trial without assigning any reason therefor and plaintiff has appealed. One of the grounds for a new trial set forth in the motion was that the verdict was against the weight of the evidence. The court having failed to state its reasons for granting a new trial, it may be assumed that it was on the ground that the verdict was against the weight of the evidence. [Alexander v. Allison, 224 S. W. 50; King v. Mann, 199 S. W. 705.]

It is well settled that the trial court has authority to grant one new trial to each party upon the ground that the verdict is against the weight of the evidence (Sec. 1415, R. S. 1919), and that the granting of a new trial on such a ground will not be interfered with by the appellate court if there is substantial evidence that would justify a result contrary to the verdict, and in no case will the granting of such a new trial be disturbed unless the evidence is such that no verdict in favor of the party to whom a new trial is granted could be allowed to stand. [Alexander v. Allison, supra; King v. Mann, supra; Bernheimer v. Scott, 228 S. W. 523.]

This suit was filed on February 24, 1919. The petition is not set out in the abstract of the record but it recites that the petition was in due form. The answer and counterclaim of defendant pleads that on July 17, 1918, the automobile in question was the property of one W. T. Middleton; that on said date said Middleton borrowed of defendant as trustee $282, evidenced by three notes to secure which said Middleton gave a chattel mortgage on said automobile in favor of one William Baldwin, who was the payee in said notes; that on January 14, 1919, a balance of $238.78 and interest was due and unpaid on said notes; that said notes were assigned to the defendant

for collection and that after frequent and unsuccessful demands for payment being made, defendant filed a replevin suit on January 14, 1919, in the circuit court of Jackson county, Missouri, against said Middleton to get possession of said automobile for the purpose of foreclosing said mortgage and collecting said notes; that on February 24, 1919, the automobile was siezed by the sheriff under a writ issued in said replevin suit and the sheriff delivered the automobile to the defendant; that immediately thereafter it was siezed again by the sheriff under a writ of replevin in the case at bar and delivered back to plaintiff; that defendant's replevin suit was undisposed of. Defendant then claimed a lien on said automobile under said chattel mortgage and claimed possession of the car, and alleged that the automobile was delivered to the plaintiff by Middleton on February 22, 1919,; that plaintiff secured a bill of sale and made a pretended purchase of the car from Middleton. Defendant prayed that the car, which was depreciating in value, be sold and that possession of the automobile or the proceeds thereof "be awarded and ordered returned to defendant and further that he be adjudged entitled to said car and the possession thereof against this plaintiff; and that he have a lien thereon for the amount and all costs as above described." Defendant further prayed for $200 damages against the plaintiff for the wrongful taking of the automobile by plaintiff. The answer also contains a general denial.

The evidence is undisputed as to the execution of the notes and chattel mortgage mentioned in the answer and there being a balance unpaid thereon at the time of the institution of this suit. However, plaintiff sought to prove that the chattel mortgage was void under section 6495, Revised Statutes 1919, on account of usury in connection with the making of the loan.

The facts in relation to the making of the chattel mortgage show that defendant Johnston was a trustee for his sister, who lived in the State of Mississippi, in loaning

a fund of about $3,000. Defendant's sister was not paying defendant anything for his services during the year in which this transaction took place. Both plaintiff and defendant are lawyers living in Kansas City, Missouri. Middleton was a friend of plaintiff and plaintiff, knowing that Johnston loaned money on automobiles, took Middleton to Johnston's office in Kansas City and applied for a loan.

Defendant testified that he made loans only to those persons who might be prospective clients of his; that his primary purpose in handling this money was to secure law business for himself; that it afforded a method of extending his acquaintance; that when Middleton and plaintiff visited his office he told them that he could not charge a commission of any sort for the loaning of the money under the holding of the case of Western Storage & Warehouse Co. v. Glasner, 169 Mo. 38. It seems that defendant was loaning the money at eight per cent. interest, the limit allowed by the statute (Secs. 6492, 6493, 6494, 6495, R. S. 1919). Defendant told Middleton that he would have to become a client of his in order for him to make the loan. He asked Middleton "was he tied up with Leavel so that he could not . . . take his law business to anybody else" and if he had any other law business, and that he (defendant) made loans only to people who could bring him law business. He also asked Middleton "if he had any title to examine or something like that." Middleton told defendant that Leavel transacted all his law business, so no agreement for law work was made but later Middleton, alone, came to defendant's office and said that he had some mining stock for sale and that if defendant would introduce him to a dozen prospects, he would pay him $25. He asked defendant if he would regard that as a proper transaction and if that would be giving defendant such business as would prevail upon him to make the loan. Defendant, having lived in the vicinity of the mining property and knowing something of it, accepted this proposition and attempted to find the dozen prospects but

was only able to find six of them, and a day or two before, or on the day of the loan, Middleton told defendant that would pay him $3 for each prospect, or $18 for all six. Middleton did not have the $18 in cash so he gave defendant his personal note for that sum, either the day of the loan or the day before. The $18 note was signed in defendant's office and was made payable to defendant.

Defendant further testified that Middleton wanted to borrow $275; that Middleton had told him that he had $300 coming to him shortly and in view of this, defendant said, "Let's make it (the loan) $282 so that it will make you owe me $300 when it comes." The loan was not consummated in Kansas City, defendant testifying that in view of the provisions of the Casey act, sections 8810-8820, Revised Statutes 1919, he was in doubt as to whether he was not required to take out a license to do a chattel loan business in Kansas City, and as to whether the making of such a loan without a license would make the mortgage invalid, so he suggested, as he did in all loans that he made, that they go to the city of Independence, the statute not applying to cities of that size, for the purpose of making the loan. He suggested this for that reason and for the further reason that he desired to extend his acquaintance for the purpose of getting business from the parties to whom he loaned money and from their friends by riding to Independence and back with them. So Middleton, plaintiff and defendant rode to Independence and there Middleton executed the chattel mortgage and notes in favor of defendant's uncle, William Baldwin, who lived in the State of Mississippi. The loan was made on July 17, 1918, and was evidenced by three notes, one for $32 due in one month, another for $50 due in two months, and the third for $200 due in three months after date. The chattel mortgage purported to secure all three of these notes but did not secure the $18 note.

Defendant further testified that when he first began to loan money as trustee he took the notes in his own name

as trustee but as he was attempting to get clients through the loaning of this money, "I didn't like for it to look as though I was loaning money," "and more than that, people thought it was my money;" that he did not think it was proper for a trustee to appear to be loaning his own money; that his uncle, William Baldwin, suggested that it was better not to make loans in defendant's name. He also testified that he told Middleton where Baldwin lived but he did not testify that he told Middleton for whom he as actually loaning the money. The $18 note was made payable on the day that one of the three notes was payable. Defendant testified that he made the $18 note payable that way because "I find I can collect a note better that way." When a fellow has to pay another note he is on hand." The notes for $18, $32 and $50 were paid. Plaintiff testified that at the time of this transaction defendant told him that he took the $18 note for his commission; that defendant said "that he was doing business at Independence because he did not want to take out a license here (Kansas City)."

Plaintiff insists that the facts show as a matter of law that defendant was charging usurious interest. This claim is based upon the contention that the suggestions of the defendant that he be given law business was merely a subterfuge for him to exact the $18 commission for the loan and that when he was unable to obtain such business he was willing, at Middleton's suggestion after the latter "saw the point" to substitute the alleged procuring of prospects for Middleton in the sale of mining stock; that this indicates that he was only looking for some excuse to avoid the usury statute; that defendant was looking for "something or other" for which he could charge for making the loan, having stated at the time the loan was being negotiated that he could not charge a commission under the case of Western Storage & Warehouse Co. v. Glasner, supra; that defendant was familiar with the Casey Act; that defendant admitted that there was a question as to whether the mortgage if executed

Leavel v. Johnston.

in Kansas City by an unlicensed broker might not be void under that act, plaintiff contending that the Casey Act does not apply to any person who does not charge more than eight per cent interest, and that, therefore, defendant by going to Independence to execute the mortgage in effect admitted that he was charging more than eight per cent interest; that Middleton wanted to borrow $275 and that the first proposition was that defendant was to furnish a dozen prospects for which Middleton was to pay $25 and that these two sums would make an amount exactly equal to the $300 that Middleton had told defendant that he was to come into; that later defendant could produce only six prospects for which Middleton offered him $18, or $3 for each name and that the loan be made for $282 which would exactly equal $300. Plaintiff concludes that defendant was simply attempting to create some excuse for taking the $18 note that would make it appear to be other than a commission or fee for his making the loan; that the trip to Independence was a deliberate attempt to avoid the provisions of the Casey Act; that from defendant's own testimony the conclusion is irresistible that the $18 note was a part of the consideration for the loan and without which the loan would not have been made. Of course, if the $18 note was a part of the consideration, the loan was usurious and the security void under the provisions of the statute, section 6496, Revised Statutes 1919.

We think that this argument would, no doubt, have a powerful and, perhaps, a convincing effect upon the jury, but is it one that should be addressed to an appellate court? The trial court, in effect, by granting the motion for a new trial without assigning any reason therefore when one of the grounds for the motion was that the verdict was against the weight of the evidence, may have believed that the weight of the evidence was against the contention of usury. It is often held that the matter of the weight of the evidence is exclusively for the trial court and not this court. [Bernheimer v. Scott,

Leavel v. Johnston.

supra.] So we are not at liberty to hold as a matter of law that defendant was guilty of usury unless all the evidence taken in its most favorable light to him shows that he was exacting usurious interest. Defendant denied that the $18 note had any connection whatever with the loan transaction and if the $18 note was for a different service and had no connection with the loan, then there was no usury in the case. [Cable & Reed v. Duke, 132 Mo. App. 334, 338.]

Of course, a mere denial by defendant that the $18 note had no connection with the loan if all the substantial evidence shows that it did, might not have any effect, but is not the evidence such that it ought to be submitted to a jury to determine whether or not the $18 note was a part of the transaction? Taking the evidence favorable to defendant, it shows that he was primarily engaged in the practice of law and was desirous of extending that practice; that he had $3000 of his sister's money which he was authorized to loan and that he made a practice not to loan to any but prospective clients. We know of no law that forbids a person who is loaning a small sum of money, or any sum for that matter, selecting a certain class of persons to whom he desires to loan the money, however arbitrary his reasons for such a selection may be. It is true that the services rendered by defendant for the $18 were not legal services and this is a fact against him, but he stated that one of his purposes in loaning the money was to extend his acquaintance which might result in his acquiring legal business. Might not this have been his intention in executing the loan in the way he did? In other words, to establish a business acquaintance with Middleton which might result in his obtaining Middleton's law business. Yet, why did he make a charge for this service?

In regard to the Casey Act defendant contends that section 8811, Revised Statues 1919, provides that any person who, either as principal or agent, engages in the business of lending money and taking as security for

the repayment thereof, a lien upon any personal chattel, is defined to be engaged in the chattel loan business and that all such persons are required to take out a license regardless of the amount of interest charged. This section standing alone would seem to so provide but a reading of the whole act clearly shows that it does not apply to any person who does not charge more than eight per cent interest. This is made manifest by the provisions of section 8810 Revised Statutes 1919 (the first section of the Act), which provides—

"It shall be unlawful for any person, firm, partnership, corporation or association in any city of this state which now has or hereafter may have a populaton of thirty thousand inhabitants or over according to the last preceding national census, to engage, either as principal or as agent, in the chattel loan business in any such city, and to exact, charge or receive, directly or indirectly, whether as interest, brokerage, fees, charges, commisions or otherwise, interest at a greater rate than eight per cent. per annum, without first being licensed as provided in this article,"

and the penalty clause which provides a penalty for the doing of a chattel loan business without a license and which makes such persons subject to the penalty only in case they charge interest for the money loaned at a greater rate than eight per cent. per annum.

Defendant did not testify that he went to Independence for the purpose of evading this law but that there was a doubt in his mind as to its applicability to the loaning of this money. However, his conduct strongly bespeaks an effort to evade the Casey law and is evidence of the claim that he was exacting usurious interest in making the loan and there are other circumstances tending to show usury.

However, we find it not necessary, in order to, uphold the ruling of the trial court, to hold that the evidence as a matter of law shows usury. The issue is raised in the answer as to whether plaintiff was the owner of the automobile and entitled to bring this suit. Plaintiff

testified that he bought the automoble from Middleton on February 19, 1919, when Middleton was leaving Kansas City; that he had lost the bill of sale; that the consideration therefor was "one dollar and other valuable considerations;" that it provided that plaintiff should take the car subject to all valid liens; that the actual consideration for the transaction was past services performed by plaintiff and consisted of the circumstance of his signing a note for $150 for Middleton which Middleton had not paid at the time the bill of sale was made. The note was not paid and plaintiff had been sued for that amount. The other services plaintiff claimed that he had performed for Middleton were of a very indefinite nature, consisting of plaintiff's help in getting a note discounted for Middleton at a bank in Rosedale, by introducing Middleton at the bank; introducing him to persons to whom he had sold mining stock and making two trips to St. Louis for Middleton to introduce him to prospective mining stock buyers for which plaintiff made no special charge nor did Middleton agree to pay. At whose expense the trips to St. Louis were made is not stated. Plaintiff also testified "he owed me some money personally." "I don't know exactly the amount." The only amount that he could specify as having loaned to Middleton was $25. The evidence shows that the automobile was of the value of $500. Defendant suggests that if Middleton sold the car to plaintiff that Middleton would have required plaintiff to take care of the unpaid note that was given to defendant, which was still valid so far as the principal and legal rate of interest were concerned. [Sec. 6494, R. S. 1919.] The record shows that Middleton was "supposed to be in Texas  .  .  . at the time of the trial." While plaintiff's evidence that he purchased the automobile from Middleton is undisputed, whether it was to be believed or not was a question for the jury, or the trial court sitting as a jury, and not for this court. [Johnson v. Grayson, 230 Mo. 380, 394; State v. Ellison, 226 S. W. 577.]

Plaintiff insists that the court erred in ordering a new trial without followng the mandate of the law by assigning a reason therefor as required by section 1454, Revised Statutes 1919. While it is the duty of the trial court to specify his reasons for granting a new trial, a violation of that duty has never been declared reversible error. [Cunningham v. Atterbury, 163 Mo. App. 594, 596; Stoner v. Royar, 200 Mo. 444.]

Defendant insists that the suit was prematurely brought and consequently that this court should direct the trial court to dismiss plaintiff's action and render judgment in favor of defendant for the value of the automobile, it having been sold. The evidence shows that this suit was brought about an hour or an hour and a half before the automobile was taken out of the possession of plaintiff and delivered to defendant under defendant's suit in replevin. It is well established that in order to enable plaintiff to maintain an action in replevin defendant must be in possession of the property at the commencement of the action. Possession essential to support an action is to be determined by reference to the time the action is instituted, and not by reference to the time the writ is served. [Emorv v. Arnold, 184 Mo. App. 99, 104, and cases cited.] The sheriff's return shows, and the answer admits, that the property was taken out of the possession of defendant. Of course, this showing in the return and admission of defendant is conclusive upon him in this suit. [Smoot v. Judd, 184 Mo. 508, 518; Railroad v. Iron Works Co., 117 Mo. App. 153, 164.] However, there is nothing inconsistent in the claim that the possession was in plaintiff at the time suit was brought and a showng that it was in defendant when the writ was served, but defendant in his answer asks that possession of the automobile or the value thereof be returned to him. This he asks on the theory that he was entitled to the automobile, having a chattel mortgage on it with condition broken. After condition

209 M. A.—14

broken the mortgagee can take possession or repelvin 'the mortgaged property wherever he finds it. ''It is his property.'' [Meyer Bros. Drug Co. v. Self, 77 Mo. App. 824, 293; Robinson v. Campbell, 8 Mo. 365; Lange v. Midwest Motor Securities Co., decided by this court but not yet reported.] Under such circumstances it would be inconsistent for the defendant, after demanding a judgment for the return of the automobile or the value thereof, to predicate a defense upon want of the possession of the property in him at the time of the commencement of the suit. [Flynn v. Jordan, 17 Nebr. 518, 522; Shinn on Replevin, section 475, p. 339.]

The judgment is affirmed. *Trimble, P. J.,* concurs; *Arnold, J.* not sitting.