CITY OF ST. CHARLES, Missouri, a Municipal Corporation (Plaintiff), Respondent,

v.

Harold DE SHERLIA and Gertrude De-Sherlia (Defendants), Appellants.

No. 29912.

St. Louis Court of Appeals.

Missouri.

Oct. 1, 1957.

Robert V. Niedner, Paul F. Niedner, St. Charles, for appellants.

Andrew H. McColloch, St. Charles, for respondent.

ANDERSON, Judge.

This is an action in ejectment which was brought by the City of St. Charles to recover possession of a certain strip of land alleged to be part of a public street in said city. The defendants are Harold DeSherlia and Gertrude DeSherlia, husband and wife, owners of land abutting on the alleged street.

The petition alleged that in 1910 Annie Dallmeyer conveyed a tract of land to William Bredenbeck and Amanda Bredenbeck, and by said deed also dedicated to the public for use as a street a strip of land 25 feet in width and 350 feet in length located in the City of St. Charles; that said street had for many years past been opened and traveled by the public; that the owners of real estate abutting upon said street and their predecessors in title have, ever since the 29th day of December, 1910, acknowledged and recognized the right of plaintiff and the public to use said strip for street purposes; that title thereto became vested in plaintiff for the use of the public for street purposes, and that plaintiff was entitled to the possession thereof; that defendants entered into possession of said strip of ground and obstructed same and prevented its use as a public street by placing thereon concrete building blocks and motor vehicles parked crosswise on said street; and that although demand was made on defendants to cease said practice they have continued to obstruct said street. The petition prayed judgment for possession, and for costs.

By their answer, defendants admitted the execution of the deed by Annie Dallmeyer, but denied that thereby said street was opened, dedicated or created. It was denied that said street had for many years been opened and used for street purposes by the public, and that the abutting property owners had, since the 29th day of December, 1910, acknowledged and recognized the right of plaintiff and the public to use said strip of ground for street purposes. It was denied that title to said ground became vested in plaintiff upon execution of said deed and use by the public. Further answering, defendants admitted that they, their servants and agents, were using said land so as to obstruct the use thereof by others. It was then alleged that they entered upon said strip "more than ten years ago and have been in open, notorious, hostile, adverse, continuous and exclusive possession of said strip ever since said time." The prayer of said answer was that defendants be dismissed with their costs.

Defendants also filed a counterclaim in which they alleged that they entered upon said strip of land in question on March 15, 1941, and since said time have been in continuous adverse possession thereof. Said pleading then, after alleging that plaintiff

was making some claim of interest in said land adverse to defendants' ownership, prayed that the court try and determine the title to said strip of land and for decree that defendants are the rightful legal owners of said strip of land. Plaintiff, by its reply to the counterclaim, denied defendants acquired the title by adverse possession, and again asked for the relief as prayed in its petition.

The trial of the ejectment suit was to a jury, and the hearing on the counterclaim was to the court. There was a verdict for defendants on plaintiff's cause of action, and a finding by the court against defendants on their counterclaim. Judgment was entered accordingly.

Defendants filed no after trial motion, and took no appeal. Plaintiff filed a motion to set aside the verdict in the ejectment suit and to enter judgment in its favor or, in the alternative, for a new trial. The trial court sustained the alternative motion for new trial and assigned as reasons therefor that the verdict was against the weight of the evidence and that instructions A and B, given at the request of defendants, were erroneous. Defendants thereupon appealed to the Supreme Court from the judgment and order granting a new trial. The Supreme Court transferred the cause to this court on the ground that it was without jurisdiction of the appeal. City of St. Charles, Missouri, v. DeSherlia, Mo.Sup., 303 S.W.2d 32.

Defendants' principal contention on this appeal is that plaintiff was not, under its petition and under the evidence adduced, entitled to a judgment in its favor, and for that reason the court erred in sustaining plaintiff's motion for new trial.

■ It is within the trial court's discretion to grant one new trial upon the ground that the verdict is against the weight of the evidence. Section 510.330 RSMo 1949, V.A.M.S. Such an order will not be interfered with absent an abuse of discretion. Woods v. Ogden, Mo.Sup., 102 S.W.2d 648; Lindsey v. Vance, 337 Mo. 1111, 88 S.W.2d 150; Stegner v. Missouri-Kansas-Texas R. Co., 333 Mo. 1182, 64 S.W.2d 691; Westinghouse Electric Supply Co. v. Binger, Mo.App., 212 S.W.2d 445. There is no abuse of discretion where it appears that substantial evidence was introduced upon which a jury could have reasonably arrived at a verdict contrary to the one returned. Westinghouse Electric Supply Co. v. Binger, Mo.App., 212 S.W.2d 445; Geiger v. City of St. Joseph, Mo.App., 198 S.W. 78; Leavel v. Johnston, 209 Mo.App. 197, 232 S.W. 1064. If plaintiff in the case at bar made a submissible case we cannot disturb the action of the trial court in granting a new trial on the ground that the verdict was against the weight of the evidence. Lindsey v. Vance, 337 Mo. 1111, 88 S.W.2d 150. But if plaintiff, under its petition and the evidence adduced, was not entitled to go to the jury, then the order of the trial court setting aside the verdict for defendants cannot be permitted to stand. Thompson v. Granite Bituminous Paving Co., 199 Mo. App. 356, 203 S.W. 496.

■ We shall state the evidence favorable to plaintiff and disregard defendants' evidence unless it aids the plaintiff's case, for the reason that in passing on the issue presented the plaintiff is entitled to all the evidence in its favor and all the favorable inferences therefrom. Wattels v. Marre, Mo.Sup., 303 S.W.2d 9.

On December 28, 1910, William Bredenbeck purchased a lot from Annie Dallmeyer. The land was conveyed by warranty deed which described said property as being "A Lot of ground in the City of St. Charles, being part of the Prairie Haute Common Fields, fronting seventy-five feet (75′) on the northwest side of Lindenwood Avenue (formerly called Orchard Street) and extending back at right angles to said Lindenwood Avenue a depth of One Hundred and Sixty feet (160′) to an alley thirty feet (30′) wide * * *."

In said deed also appears the following agreement: "And said party of the first part does further promise and agree to open

**460**

and dedicate and by these presents does open and dedicate to the public a strip of ground for a public street, twenty-five feet (25′) wide and adjoining on the northeast the center line of West Clark Street prolonged northwestwardly from Lindenwood Avenue a distance of Three Hundred and Fifty feet (350′). Also a strip of ground for a public alley thirty feet (30′) wide and one hundred and seventy-five feet (175′) long, the same being parallel to Lindenwood Avenue and a distance of one hundred and sixty feet (160′) therefrom and extending northeastwardly from said prolongation of West Clark Street. A plat showing the location of the lot of ground hereinabove conveyed and also the location of said strips of ground dedicated as a public street and a public alley being hereto attached and made a part of this deed."

Attached to said deed was a plat described thereon as "Plat of property belonging to Annie Dallmeyer being in Prairie Haute Common Fields, lying northwest of Lindenwood Avenue and northeast of West Clark Street prolonged, showing location of lot therein sold to William Bredenbeck and Amanda Bredenbeck and also locations of northeast half of West Clark Street prolonged and thirty foot strip through said property, both dedicated to public use."

This deed, together with the plat, according to the certificate of the Recorder of Deeds of St. Charles County, was filed for record on December 29, 1910, and recorded in Book 111, being at page 145 of the records of said county.

The plat in question shows Lindenwood Avenue running in a northwestwardly and southeastwardly direction. The property described in said plat as belonging to Annie Dallmeyer extends 200 feet on Lindenwood Avenue with a depth northwestwardly of 350 feet. The land in dispute is shown as being located along the whole length of the southwest side of the property. It is 25 feet wide, and is marked on the plat as the "northeast ½ of West Clark Street prolonged = 25 feet wide." Clark Street, 50

feet wide, enters Lindenwood Avenue just opposite the place where the 25 foot strip connects with Lindenwood Avenue. The plat shows three lots fronting on Lindenwood Avenue. The first lot northeast of the 25 foot strip is marked on the plat as unsold. It fronts 50 feet on Lindenwood Avenue and has a depth of 160 feet to a strip of ground marked on the plat as "alley 30 feet wide." This alley is the one described in the Bredenbeck deed as being dedicated to the public. The lot was afterwards sold to a Mr. Bowles.

Immediately northeast of the Bowles lot, and fronting on Lindenwood Avenue, is the Bredenbeck lot. It also abuts the alley. Its dimensions are 75 feet by 160 feet. Northeast of the Bredenbeck lot is a lot marked on the plat as being sold to Mary R. Loonam. It has a width of 50 feet fronting on Lindenwood, and extends northwestwardly 160 feet to the alley. Across the alley from these three lots is a lot marked on the plat as unsold. It abuts the alley a distance of 175 feet and extends northwestwardly from the alley 160 feet. This lot was later sold to Mr. Clark and is referred to by the witnesses as the Clark property. At present it is owned by the defendants, who purchased it after this suit was filed. There is no house on the Clark property. At one time Mr. Clark erected a shed on it. Defendants also own the land southwest of and abutting on the 25 foot strip along its entire length. On it, in addition to a house, is a concrete block plant which has been operated by Mr. DeSherlia since 1949. Mr. DeSherlia purchased this land in 1941. This land is not shown on the plat. Nor is the land northwest of the Clark lot, which until recently was farm land and known as the Boschert farm. Northeast of the platted area was property belonging to the Loonams.

William Bredenbeck testified that he erected a house on his lot in 1911 and has resided there continuously since that time. He first used that part of the 25 foot strip between Lindenwood Avenue and the alley in 1911 to get coal to his coal shed located on the alley at the rear of his lot. In those

days coal was delivered by team and wagon. The drivers would enter the 25 foot strip at Lindenwood and drive to the alley, then to the coal shed. Coal was delivered in this manner for about 25 years. At the present time, and for the last fifteen years, Mr. Bredenbeck has had his coal delivered directly from Lindenwood Avenue to his basement. This was because he installed a furnace in his house about fifteen years ago. After that he kept his coal in the basement, the entrance to which was from Lindenwood Avenue.

Mr. Bredenbeck further testified that he had observed Mr. Loonam, who lived northeast of the platted area, using the alley and the 25 foot strip leading up to it from Lindenwood. The first time was about twenty years previous. They would have coal delivered to their shed. They also had a garage on their property in line with the alley.

In 1926 Mr. Bredenbeck erected a garage in the rear of his lot. He bought an automobile at the time. In traveling from Lindenwood to his garage he would travel over this 25 foot strip to the alley. Mr. Lee Bowles built a house on his lot and moved into it the latter part of 1911 or the first part of 1912. This house was located on the lot at the corner of Lindenwood Avenue and this 25 foot strip. He and his family still live there. Mr. Bowles has built a garage on his lot opening onto this 25 foot strip, also a workshop on the alley. He started using the 25 foot strip shortly after Mr. Bredenbeck did. He is still using the 25 foot strip as a means of access to his garage. Mrs. Bowles testified that they had a coal shed on the alley and, until they discontinued use of coal about two years ago, coal was delivered to their shed over this 25 foot strip.

Mr. Wilfred Richardson lives on the lot belonging to Mary Loonam, which is adjacent to and northeast of the Bredenbeck property. He has lived there about five years. He uses the 25 foot strip from Lin-

denwood Avenue and the alley to get to his garage.

The twenty-five foot strip ended at the Boschert property line. Until recently the Boschert land was used for farming purposes. It was known as the old Abe Boschert farm. Fred W. Boschert, a witness for plaintiff, was born on this farm in 1901, and lived there until 1921. He testified that during that time members of his family and the hired help at different times plowed the gardens belonging to the Loonams and Spaldings, and in doing this would go back and forth over the 25 foot strip. In going to the Loonams they would enter it at the border line of the farm and drive to the alley, then northeastwardly over the whole length of the alley. To reach the Spalding tract the practice was to enter the 25 foot strip at the border line of the farm and drive the full length of the 25 foot strip to Lindenwood Avenue. These trips over the 25 foot strip for plowing operations occurred about 25 or 30 times a year. During this time the Boscherts maintained a fence between their farm and this 25 foot strip. This was for the reason that they kept hogs and cattle on the farm. At times they maintained a gate in this fence, but on account of trouble with boys and hunters trespassing on their property it became a problem to maintain the gates. For this reason a permanent fence was used which was rebuilt after each use of the strip. In addition to using this 25 foot strip to convey equipment for plowing and harrowing their neighbors' gardens, the Boscherts would haul loads of hay through the strip.

The testimony of Fred W. Boschert with reference to the use of the 25 foot strip was corroborated by Mr. Bredenbeck. The latter also testified that he had seen Mr. Clark use this 25 foot strip. Mr. Clark's land bordered on said strip and the alley.

Abe Boschert died in 1948, at which time Fred W. Boschert took over the active management of the farm. After that Fred would drive his automobile over this 25 foot

strip and stop within a few feet of the border line of the farm. In 1950 he bought a parcel of land east of the farm. Thereafter he planted crops on that part of the land that bordered the Clark property. Wheat was planted on this land, the last crop being in 1953. After the grain was harvested it was taken out over this 25 foot strip from the farm to Lindenwood Avenue. This occurred in 1952 and 1953. On occasion, people who lived in that part of town would walk down the 25 foot strip to watch the men at work harvesting and threshing grain.

Mr. DeSherlia and his customers have used this strip to get to the block plant located on Mr. DeSherlia's property. Mr. DeSherlia's friends also have used said strip. Ted Schoetker testified that he had driven from Lindenwood Avenue over this 25 foot strip to Mr. DeSherlia's concrete block plant. He stated that he had driven on that portion northwest of the alley; that he would turn around after passing the block plant about 20 or 25 feet from the Boschert tract. J. E. Duckworth, who with his father operated a service station from 1925 to 1940, testified that he had traveled over the 25 foot strip from Lindenwood to the alley and over the alley to the Loonam place probably a dozen times in making service calls. Clarence Boschert testified that he was living on the Boschert land in 1920 and that during one year between 1921 and 1925 he traveled the full length of this 25 foot strip ten or twelve times in an empty wagon after delivering wheat to the elevator at threshing time.

In 1953 Mr. Boschert started to develop his land into a subdivision. He stated that during that year he used the 25 foot strip. In 1952 and 1953, during the progress of the development, Mr. Boschert employed the St. Charles Quarry Company to haul dirt to make a fill at some point in the subdivision. The trucks of the Quarry Company used the 25 foot strip after the dirt had been dumped. There were several hundred loads hauled. DeSherlia made no complaint about the use of the strip for this purpose. Mr. Boschert

testified that the last time he used the strip was about a year before the trial. He stated that he would drive there quite often and watch the progress of the work on driveways and the grading in the subdivision. He stated he would stop on this 25 foot strip just before he would get to his property line. Mr. DeSherlia never objected or ordered him off the property.

When Mr. Bredenbeck moved onto his property there was a fence along the southwest side of this 25 foot strip, separating said strip from the land now owned by defendants. This fence extended from Lindenwood Avenue to the Boschert tract, 350 feet. The other side was not fenced at that time, but about five years later Mr. Clark erected a fence there separating his land from this 25 foot strip. This fence had been taken down at the time of the trial. The record does not show when this was done.

Defendants owned the Clark property at the time of trial. There never was a fence across the mouth of the alley where it intersects with the 25 foot strip. When Mr. Bredenbeck moved onto his property there was a fence across the 25 foot strip at Lindenwood Avenue.

Mr. Bredenbeck went to the City Surveyor and made a request that he open this strip. After this conference, Mr. Bredenbeck began using this strip as a means for getting coal to his shed located on the alley.

It was Mr. Bredenbeck's practice to dump ashes in holes on this 25 foot strip at its lower end near the Boschert line. This went on for a period of twenty-five years. He discontinued this practice about five years prior to the trial when he noticed that Mr. DeSherlia didn't like it. Other people dumped tin cans in this area. The land there was not very level, but according to Mr. Bredenbeck one could get through there in a wagon. Mr. Clarence Boschert testified that in 1920 the 25 foot strip was about 2 to 2½ feet higher than the level of the Boschert field. There was a gradual drop-off to the Boschert farm.

In May, 1953, the city extended a water main the full length of this 25 foot strip from Lindenwood Avenue to the Boschert subdivision. Walter G. Oelklaus, Superintendent of the Water Department, testified that when he was preparing to proceed with this project he observed some concrete blocks on this strip in question. He told Mr. DeSherlia to remove these blocks. The blocks were removed. Mr. DeSherlia made no claim of ownership of the strip at that time.

Andrew J. Pallardy, a police officer in charge of traffic direction and investigations, testified on behalf of the plaintiff. He stated that on August 3, 1954, he went to investigate a complaint with reference to the storing of concrete blocks on this 25 foot strip. He found concrete blocks piled on the northwest side of said strip covering approximately five or six feet of its width. He asked Mr. DeSherlia to remove the blocks. The latter replied that they would be removed and that he would refrain from placing any more of the blocks there. On August 18, 1954, Mr. Pallardy had another conversation with Mr. DeSherlia about an automobile or truck parked on this land. There were also concrete blocks piled there at the time in the same place as they were on the officer's first visit. Pallardy asked Mr. DeSherlia if he intended to move the blocks. Mr. DeSherlia replied: "We are using off of them." The officer then told him of the complaint with reference to the car making it difficult to get trucks through from the subdivision and told him he should remove it. DeSherlia replied he didn't know anything about it; that the officer should contact his lawyers, Niedner and Niedner, in regard to that piece of property. Officer Pallardy testified that prior to that time DeSherlia never stated he was the owner of any portion of that 25 foot strip.

Marcella Wilson, a member of the City Council, also testified for the plaintiff. She stated that in 1953 Mr. DeSherlia was present at a meeting of the council when a discussion was had between a few members of the council and Mr. DeSherlia. Mrs. Wilson asked Mr. DeSherlia how long he planned to have his blocks on this property. A Mr. Hamilton then interceded for Mr. DeSherlia and requested that the latter be allowed to keep the blocks there until such time as he was requested to remove them. Those present agreed to this. Mayor Vogt testified that Mr. DeSherlia never told him that he claimed an interest in this land.

In support of the contention that the court erred in granting a new trial appellants urge, first, that plaintiff was not entitled to a judgment under its petition. It is said that the plaintiff failed to allege the essential fact of ownership by Annie Dallmeyer of the land in controversy at the time of the attempted dedication, hence said petition failed to state facts upon which relief could be granted.

Section 524.060 RSMo 1949, V.A.M.S., provides that in actions in ejectment:

> "It shall be sufficient for the plaintiff to aver in the petition that on some day therein to be specified, he was entitled to the possession of the premises, describing them, and being so entitled to the possession thereof, that the defendant afterward, on some day to be stated, entered into such premises, and unlawfully withholds from the plaintiff the possession thereof, to his damage, in any sum he may claim."

After alleging the execution of the deed by Mrs. Dallmeyer and the use of said strip by the public, the petition alleged that: "on the 29th day of December, 1910, and at all times subsequent thereto, plaintiff was and now is entitled to possession thereof for public use as a street." It was then alleged that on or about the 1st day of May, 1953, defendants obstructed and encumbered said strip of ground and prevented its use as a street by placing

thereon concrete building blocks; that on or about June 1, 1955, defendants entered into possession of said strip and obstructed and encumbered same and prevented its use as a public street by placing thereon concrete building blocks; that on the 2nd day of August, 1955, defendants obstructed and encumbered said public street by parking crosswise upon a portion thereof passenger motor vehicles and trucks, thereby preventing the use of said public street by plaintiff and the public, and "defendants now unlawfully withhold possession thereof from plaintiff and the public."

In our judgment the petition met all the requirements of the statute. It was not necessary for plaintiff to plead the evidence of title or its origin. It was sufficient to plead the facts required by the statutes, which was done. Even under the general law, independent of the statute, the pleading was sufficient. 28 C.J.S. Ejectment § 63, p. 914.

█ It is next urged that the petition is fatally defective in that there was no allegation of public user of that part of the alleged street involved in this case, that is, the portion lying northwest of the alley, between said alley and the Boschert farm. Here again the test is whether the petition was so defective that plaintiff was not entitled to go to the jury. Thompson v. Granite Bituminous Paving Co., 199 Mo.App. 356, 203 S.W. 496.

The petition alleged a dedication by Mrs. Dallmeyer of the whole 25 foot strip from Lindenwood Avenue northwestwardly 350 feet. It was then alleged that the portion of said strip between Lindenwood Avenue and the alley, being a distance of 190 feet, had for many years been opened, used and traveled for street purposes, and that the owners of property abutting upon said strip, as described in said petition, and their predecessors in title, had, ever since the 29th day of December, 1910, acknowledged and recognized the right of plaintiff and the public to use said strip for street purposes. It was then alleged that when Mrs. Dallmeyer's deed was executed, acknowledged and recorded, and the street opened, used and traveled for street purposes by the public, title to the whole strip became vested in plaintiff for use by the public for street purposes.

At the trial plaintiff offered evidence of use by the public not only of that portion of the strip between Lindenwood Avenue and the alley, but also of the entire strip. Defendants joined issue and introduced evidence from which the jury could reasonably have found that there was no use by the public of that portion between the alley and the Boschert farm. In this state of the record, it clearly appears that the issue of use by the public of that portion of the alleged street northwest of the alley was tried by implied consent of the parties, and such issue was therefore to be treated by the trial court as though it had been specifically raised in the pleadings. Section 509.500 RSMo 1949, V.A.M.S.; Payne v. White, Mo.App., 288 S.W.2d 6; In re Oberman's Estate, Mo.App., 281 S.W.2d 549; Duffy v. Barnhart Store Co., Mo.App., 202 S.W.2d 520; Schroeder v. Zykan, Mo.App., 255 S.W.2d 105, 107; Feltz v. Pavlik, Mo.App., 257 S.W.2d 214; Heath v. Heath, 359 Mo. 590, 222 S.W.2d 778.

█ It is next urged that the motion for a directed verdict should have been sustained for the reason that plaintiff failed to prove that Mrs. Dallmeyer had title to the premises when she executed the deed which purported to dedicate the land to public use. There is no merit to this contention. Plaintiff introduced the deed into evidence. By its terms it granted to the public an interest in said land. When the deed was received in evidence a procedural presumption arose that Mrs. Dallmeyer was the owner of the land at the time she executed said deed. Farwell v. Rogers, 99 Mass. 33; West & Russell v. Rawden, 33 Okl. 399, 130 P. 1160; King's Lessee v. Hall, 1 Tenn. 209. Defendants in their

pleading admitted the execution of the deed, and offered no evidence whatever to rebut the presumption of ownership in Mrs. Dallmeyer.

■ Defendants also contend that they were entitled to a directed verdict because plaintiff failed to prove either a statutory or common law dedication.

Plaintiff concedes that the pertinent facts are not sufficient to establish a statutory dedication. The requirements of the statute were not met. Section 10290 R.S. 1909, now Section 445.010 RSMo 1949, V.A.M.S.; City of Caruthersville v. Huffman, 262 Mo. 367, 171 S.W. 323. But the statute does not in any way restrict the common law power of the owner to devote his land, or some easement therein, to the use of the public. A common law dedication is accomplished when the proprietor of land does some act which clearly indicates his intention to dedicate the land to public use and there is an acceptance by the public.

■ The intention of the owner to set apart the land for use of the public is the foundation and life of every dedication. That intention may be manifested and the offer extended to the public in a plat executed in an attempted compliance with the statute, or it may appear in a deed or deeds between private persons. Poage v. Oser, Mo.App., 6 S.W.2d 1009; Whyte v. City of St. Louis, 153 Mo. 80, 54 S.W. 478. Acceptance may be implied from long continued use by the public as of right. Minium v. Solel, Mo.Sup., 183 S.W. 1037; Hanke v. St. Louis, Mo.Sup., 272 S.W. 933; Benton v. St. Louis, 217 Mo. 687, 118 S.W. 418; Township Board of Triplet Township v. McPhearson, 172 Mo.App. 369, 157 S.W. 857; State v. Muir, 136 Mo.App. 118, 117 S.W. 620; or by acts of the City itself, such as extending to the alleged street the customary municipal services. Shaw v. St. Louis-San Francisco Ry. Co., 223 Mo.App. 1008, 9 S.W.2d 835.

■ In the case at bar we find the recitals in the deed executed by Mrs. Dallmeyer, and in the plat attached thereto, sufficient to warrant a finding that Mrs. Dallmeyer intended to dedicate the land in question as a public street. Whyte v. City of St. Louis, 153 Mo. 80, 54 S.W. 478; Poage v. Oser, Mo.App., 6 S.W.2d 1009.

But defendants say there was no substantial evidence of acceptance by the public of the strip in question as a public street, especially that portion lying northwest of the alley. It is urged that, at most, the evidence showed a use private in nature which could not be the basis of a finding of acceptance for public use.

The attempted dedication by Mrs. Dallmeyer in her deed to the Bredenbecks constituted by its terms an offer of land as a public street, and the jury would be warranted in finding that its use thereafter was in response to the offer, and not the attempted assertion of an individual right such as a private easement acquired through prescription, as suggested by defendants.

■ Also, in determining whether the land lying northwest of the alley constitutes a public street, the character of the use of the whole street may be considered. It was the intent of Mrs. Dallmeyer to dedicate the whole strip, and use by the public of any substantial portion could reasonably be considered by the triers of fact as evidence of acceptance of the whole as laid out on said plat. City of Caruthersville v. Huffman, 262 Mo. 367, 171 S.W. 323; Town of Otterville v. Bente, 240 Mo. 291, 144 S.W. 822; Heitz v. City of St. Louis, 110 Mo. 618, 19 S.W. 735.

■ We have heretofore referred in detail to the evidence bearing on the use made of the strip in question. It appears from that evidence that the portion of said strip lying between Lindenwood Avenue and the alley was used quite extensively

by the lot owners in the subdivision as a means of access to their garages located on the alley at the rear of their lots. It was also used by coal dealers in making deliveries of coal to these same people. The Loonams, who lived northeast of the subdivision, made like use of it. The defendants' customers have used the strip in going to and from defendants' concrete block plant located on this strip. J. E. Duckworth traveled over this strip probably a dozen times from 1925 to 1940 in making service calls at the Loonams. The Boscherts used the strip northwest of the alley in the early years as a means of travel from their farm to the Loonam place and the Spalding farm. This occurred about 25 or 30 times a year. Later, in 1952 and 1953, Fred Boschert hauled grain over this strip during the harvesting period. During the progress of the development of the subdivision, which began in 1953, trucks of the St. Charles Quarry Company traveled over this strip after hauling dirt to the subdivision. During this period Fred Boschert would drive over it quite often to observe the progress of the work in the subdivision.

It also appears that this portion of the strip was fenced on both sides by the abutting property owners, thus indicating a recognition by them of such strip as a public street. It also appears that the city extended its water main along the entire length of the strip.

In our judgment, there was ample evidence to justify submitting to the jury the question of acceptance by the public; and since a case for the jury was made by plaintiff on all issues, the court did not abuse its discretion in granting a new trial on the ground that the verdict was against the weight of the evidence.

In view of what we have said it becomes unnecessary to rule on appellants' further assignment that the court erred in granting a new trial for alleged errors in defendants' instructions A and B.

The order of the court sustaining plaintiff's motion for new trial is affirmed.

RUDDY, P. J., and MATTHES, J. concur.