## VIRGIL O. BAY, Respondent, v. ANDREW WANK, Appellant.*

In the Kansas City Court of Appeals, April 2, 1923.

1. **CONTRACTS: Pleading: Where Express Contract is Declared upon, Recovery Must be Had upon Contract Pleaded or Not at All.** Where an express contract is declared upon, plaintiff must recover upon the express contract pleaded, or not at all.

2. **BROKERS: Contracts: Letter of Broker to Owner and Owner's Reply Thereto Held not to Create Contract Entitling Broker to Commission, but Merely to Give Broker an Option to Purchase.** Where plaintiff, a telegraph operator, was engaged on the side in the business of selling real estate on commission, wrote a letter to defendant, an owner of mining property, stating that he knew some people who were in the market for mining properties, requesting information as to the terms on which the owner wanted to handle property, and the owner in replying stated he would make a net price of nine thousand dollars and no commission, *held* plaintiff did not have a contract entitling him, on sale of the land to a commission on all over nine thousand dollars that he might obtain for property, but merely had an option to purchase the property for such price.

3. **INSTRUCTION: In Action upon Express Contract, an Instruction Submitting Facts Which Might Show Implied Contract Held Erroneous.** In an action by broker, upon express contract, to re-

(153)

cover commission, instruction *held* objectionable as submitting facts to jury which might show an implied contract and not the express contract pleaded.

ON REHEARING

4. **EVIDENCE: Letters not Couched in Technical Terms nor Constituting a Contract of Doubtful Meaning, Held not Subject to Explanation.** Letters not couched in technical trade terms and which did not constitute a contract of doubtful meaning were not subject to explanation.

---

*Headnote 1. Contracts, 13 C. J., Section 908; 2. Brokers, 9 C. J., Section 59; 3. Contracts, 13 C. J., Section 1020; 4. Evidence, 22 C. J., Section 1570.

Appeal from Circuit Court of Buchanan County.—*Hon. Thomas B. Allen,* Judge.

REVERSED.

*John E. Dolman* for appellant.

*J. M. Johnson, Wm. E. Stringfellow* and *Scholer & Alford* for respondent.

BLAND, J.—This is an action for a real estate broker's commission. There was a verdict and judgment in favor of plaintiff in the sum of $6000 and defendant has appealed.

Plaintiff was a telegraph operator who engaged on the side in the business of selling real estate on commission. In April or May, 1917, hearing that defendant, whom he did not know, wanted to dispose of some mining property located at California, Missouri, wrote defendant a letter concerning the sale of the property. The property was owned by defendant personally and through a corporation of which he owned the stock. Plaintiff did, not keep a copy of the letter nor defendants reply thereto but plaintiff testified:

"I wrote to Mr. Wank and told him that I had heard that he wanted to dispose of the mining property at California. I told him that I had been successful in handling several properties, and that I knew of some people that were in the market for mining properties and to let me know on what terms he wanted to handle it on. . . . Mr. Wank wrote me a letter stating what he had there, describing the mill and the land. Of course I knew where the land·was. I knew it before Mr. Wank did, and he said he was very anxious to sell it, that he wanted to go to—I believe Arizona, and that he would make a net price of nine thousand dollars and no commission."

Plaintiff attempted to sell the land to two gentlemen living at Carthage, Missouri, but was unsuccessful. In August, 1917, a Mr. Derr, at the time of the trial deceased, came to Sedalia where plaintiff was then employed and attempted to sell plaintiff and others some oil leases. Plaintiff was not interested but told Derr that he had some property that "I thought I could interest him in and that he could interest other people much easier than he could in some of his oil leases." He then took Derr to California, showed him the mining property and made Derr a price of $15,000 for the property. Derr said that there were some people in Des Moines, Iowa, that he thought he might interest in the property. Plaintiff told Derr that defendant owned the property and that he lived in St. Joseph, Missouri, and Derr suggested that he stop off at St. Joseph, Missouri, on his way to Des Moines and see the defendant. Thereupon plaintiff called defendant by long distance telephone and told him that he had taken Derr to look at the property and that Derr would see him the next day at St. Joseph on his way to Des Moines to interview some parties concerning the purchase of the property, and that he had quoted Derr a price of $15,000, "or may be $20,000." Derr told plaintiff that he thought he could get $25,000 for the property. Some time after Derr first came to Se-

dalia, defendant wrote plaintiff "wanting to know what was being done and insisting on hurrying up;" that defendant desired to go to Arizona.

Apparently the Des Moines people were not interested and Derr brought some other parties from Oklahoma and Colorado to whom plaintiff showed the property. Derr then interested Messrs. Nichols and Rosenfield in the property. Plaintiff showed Rosenfield the property in such a way as to cause Rosenfield to be interested in the same, resulting in Rosenfield's making an offer to defendant which was not accepted. After Derr saw defendant at St. Joseph he secured an option from defendant to buy the property for $15,000. This option was extended from time to time and expired three days prior to the consummation of an agreement between defendant and Derr, Nichols and Rosenfield, who purchased the property from the defendant for $15,000 and had the title of the same conveyed to a corporation which they formed. The purchase price was paid partly in cash. The corporation soon failed. Plaintiff, hearing of the sale, demanded of the defendant the difference between the price quoted him by defendant, nine thousand dollars, and the amount for which the property was sold. Defendant refused to pay the same, resulting in this suit.

Defendant's version of the transaction was that plaintiff simply wrote him asking what he would take for eighty acres of the property (the whole being one hundred and twenty acres) and that he answered, "I would take nine thousand dollars cash, no commission" for the eighty. .

The petition declares upon an express contract whereby defendant employed plaintiff to sell the property on commission. The material allegations of the petition are as follows:

"Plaintiff further alleges that in the late summer or early fall of the year 1917 defendant placed said real estate in the hands of plaintiff, who was a real estate

agent, to sell for him, and agreed that if plaintiff would find a purchaser who was ready, willing and able to buy said land at a price in excess of nine thousand dollars ($9000), that the defendant would allow and pay to plaintiff as his commission for finding such purchaser any sum over and above the said sum of nine thousand dollars ($9000), for which defendant might sell said land to such purchaser.

"Plaintiff further alleges that pursuant to said employment he spent much time and effort to find a purchaser for said land, and in the said fall of 1917 he found one C. M. Derr, to whom he showed said real estate and explained its merits, and thereupon sent said Derr to defendant.

"That said Derr did interview defendant and talked to him about said property and defendant well knew that said Derr had been procured as a prospective purchaser by plaintiff. That afterwards plaintiff exhibited said property at various times to said Derr and to others brought there by Derr, especially to one C. W. Nichols and to one Louis Rosenfield, and thereafter the said Derr, Nichols and Rosenfield formed a partnership for the purchase of said land, and unknown to this plaintiff closed the sale with defendant for the sum of fifteen thousand dollars ($15,000), such sum being six thousand dollars ($6000) over and above the price defendant agreed with plaintiff to accept for said land."

Defendant's point that the court erred in refusing to give his instruction in the nature of a demurrer to the evidence, we think is well taken. We think the evidence fails to prove the express contract pleaded. It is well settled that where an express contract is declared upon, plaintiff must recover upon the express contract pleaded or not at all. [McDonnell v. Stevinson, 104 Mo. App. 191; Cole v. Armour, 154 Mo. 333, 350; Michael v. Kennedy, 166 Mo. App. 462; Stanley v. Whitlow, 181 Mo. App. 461, 464; Lewis v. Slack, 27 Mo. App. 119.] The reply of the defendant to plaintiff's inquiry regarding

the sale of the land does not contain any agreement to pay plaintiff a commission on all over nine thousand dollars that he might get for the property. The defendant simply made "a net price of nine thousand dollars" and stipulated that he would pay no commission. In Johnson v. Whalen, 74 Pac. 503, (Okla.) plaintiff, a real estate agent, wrote letters to the defendant, the owner of land, asking him the lowest price that he would take for it and if he would take $3800 cash. Defendant answered, "Thirty-eight hundred will not buy it. Four thousand ($4000) cash will buy it net to me; and no less." The agent sold the land for $4300 but the defendant refused to close the transaction. Plaintiff sued for the difference between the amount quoted ($4000) and the amount for which the land was sold. The court held that the letters did not constitute a contract of employment of plaintiff to sell defendant's farm for $4000. We think the letter in the case at bar is even less favorable to plaintiff's contention than the letter in the case of Johnson v. Whalen, was to plaintiff in that case, for here defendant stipulated that he would pay no commission. We think that the agreement shown in plaintiff's evidence falls short of proving the express contract pleaded in the petition. [Johnson v. Whalen, supra; Youngman v. Miller, 241 S. W. 433; Michael v. Kennedy, supra, l. c. 465, 466.]

Plaintiff offered and the court gave his instruction No. 1, which had the jury find facts as shown by the evidence but not as pleaded in the petition, that is, that defendant wrote plaintiff that he would sell "said property for nine thousand dollars net to defendant without commission," and afterwards that defendant wrote plaintiff requesting that the sale be hurried; that plaintiff found Derr and showed him the property and informed defendant that Derr would call upon him and enter into negotiations for the purchase of the property; that Derr pursuant to his negotiations with plaintiff entered into negotiations with defendant, resulting in the sale, etc.

The jury were further instructed that if they found such facts to be true, they would find that they constituted a contract of employment by which plaintiff became an agent of the defendant to sell the property on commission for any amount in excess of nine thousand dollars that he might sell the property. This instruction is objectionable as it submits facts to the jury which might show an implied contract to sell under such circumstances but did not submit the express contract pleaded. It may be that the facts proved and submitted in plaintiff's instruction No. 1 would give rise to an implied contract between the parties employing plaintiff to sell the land on commission but whether or not the facts shown in evidence are sufficient to show such a contract we need not say for the reason that the matter is not now briefed or presented to us for decision.

The judgment will be reversed and the cause remanded, and it is so ordered. All concur.

## ON REHEARING.

BLAND, J.—It is insisted by plaintiff that the proof of the contract should not be limited to the first letter and reply; that the petition is not so limited but is in the broadest terms, pleading in their legal effect the facts. It is insisted that not only the first letter and reply but all of the communications and acts of the parties should be considered in determining whether there was an express contract. The only other communications had between the parties, the nature of which is shown in the record, were, first, the conversation had over the phone in which plaintiff told defendant that the former had taken Derr to look at the property; that Derr would see defendant the next day at St. Joseph, Missouri, while on his way to Des Moines, Iowa, to interview some parties concerning the purchase of the property, and that defendant had quoted Derr a price of $15,000; and, second, the letter written by defendant to plaintiff some time after Derr first came to Sedalia

in which defendant wanted to know what was being done and insisting on plaintiff's hurrying up, that defendant desired to go to Arizona.

Construing all these communications, together with the acts of the parties as recounted in the opinion on the original submission of the case, we think that plaintiff wholly failed to prove the express contract alleged in the petition. That contract was that defendant, in the early fall of 1917, placed the land with plaintiff, a real estate agent, for sale, agreeing to pay as a commission, should plaintiff find a purchaser, all over and above $9000 for which defendant might sell the land. The original communications instead of being an agreement to pay a commission constitute a positive statement by the defendant that he would not pay a commission, and instead of the agreement being to pay a commission it was one, if anything, not to pay a commission. Defendant's original communication appears to be an option, if anything, to plaintiff to buy the land at the net price of $9000. It cannot be construed to mean to be an offer to plaintiff to permit him to sell the land for a commission.

It may be, we do not say, that these subsequent communications and the conduct of the parties were sufficient from which the jury might say that there was an agreement to pay a commission for the sale of the property, but they do not afford any basis for the contention that plaintiff was to receive as his commission all in excess of $9000 that the property might be sold for. If they constitute a contract at all the amount of the commission was omitted, the implication or inference being that that amount would be the usual commission. Likewise a jury might say that the other communications had between the parties are not inconsistent with the idea that the original communications merely amounted to an option. The only way in which a jury could find that the subsequent communications and conduct of the parties show a contract to pay a commission of all in excess of

$9000 that the property should be sold for, would be for them to refer back to the original communication of defendant wherein he said that he would take a "net price of $9000 and no commission" for the land. The matter cannot be helped out by referring to this communication for the reason that the language positively refutes the idea that any commission was to be paid much less a commission of all in excess of $9000 the property should bring. Unless we can say that no commission means a commission, we think that plaintiff entirely fails to make out the case pleaded in his petition. The initial letters are not couched in technical trade terms nor do they constitute a contract of doubtful meaning and, therefore, subject to explanation.

It is insisted that in receiving plaintiff's original communication, defendant as a reasonable man must have concluded that plaintiff was a real estate agent seeking to sell the land on a commission, for the reason that plaintiff wrote to defendant that "he (plaintiff) had been successful in handling several properties, and that I knew of some people that were in the market for mining property and to let me know on what terms he wanted to handle it on," and that defendant, having answered the letter in the way he did, offered to let plaintiff sell the property on a commission, the amount of which was to be any sum in excess of $9000 that the land should be sold for. Even had the defendant been apprised of the fact by plaintiff's original communication that plaintiff was a real estate agent, there was nothing unusual or unreasonable in the idea that defendant was willing to sell the property to plaintiff or that if the property was sold to a third party such party should pay a commission. In fact, defendant testified that he did not know when he wrote plaintiff the letter whether he was a real estate agent or not; that in case plaintiff was a real estate agent, defendant wanted to make it clear that he was to get $9000 out of it and that he did not care what plaintiff got out of it. There is nothing in the law nor in

215 Mo. App.—11.

reason requiring the owner of real estate to pay a commission when he merely writes a real estate agent quoting a net price on his property and stating that he will pay no commission.

Plaintiff states that the judgment should either be affirmed or reversed outright. Plaintiff failing to prove the cause of action alleged in the petition, the judgment is, therefore, reversed. All concur.