J. H. HALEY and J. D. HOSTETTER, Appellants, v. WILLIAM H. SIPPLEY.—297 S. W. 362.

Division One, June 25, 1927.

1. **FINDINGS: By Court Sitting as Jury: Suit to Quiet Title.** Actions to quiet title may be at law or in equity, and when at law the findings of the court sitting as a jury, if based upon substantial evidence, are conclusive of the facts.

2. **ESTOPPEL: Unpleaded.** Estoppel in pais is an affirmative defense, and to be available must be pleaded; and if not pleaded, the effect of evidence bearing upon estoppel in pais cannot be considered.

3. **CONVEYANCE: Description: General Words: Restricted by Particular Words: All Interest: One-Fourth.** General words of description in a conveyance or other contract may be modified and restricted by particular and definite words following them. A description by which a husband and wife conveyed "all interest as heirs" of her father, "to-wit: an undivided one-fourth interest," is not ambiguous, but in effect the same as if it had said: "We convey all interests as heirs, which interest is an undivided one-fourth." If the wife was at the time the sole owner by devise of all interests in the tract, the deed did not convey her remaining three-fourths interests.

4. ————: **Intent: Evidence.** If the language of a deed is unambiguous and its descriptions definite, no evidence to explain the grantor's intention is admissible, but her intent is to be gathered from its unambiguous words.

5. **LIMITATIONS: Life Estate: Conveyance of One-Fourth Interest.** Testator, the owner of a homestead of 110 acres, by will gave one dollar each to his son and two daughters, and the residue of his property to a third daughter, making no mention of his wife. The will was probated in 1894, and the widow continued to occupy the premises until 1895 and then sold and conveyed all her interest and estate as widow to defendant, who went into possession. In 1898 the third daughter and her husband conveyed to

defendant "all interest as heirs" of her father, "to-wit, an undivided one-fourth interest in and to" said land; and on the previous day the son and one of the two daughters, and in 1901 the second of the two daughters, each conveyed to defendant by the same description; and defendant, being then in possession, has remained in possession ever since. In May, 1923, the widow died, and in August of that year said third daughter and her husband, by quit claim deed, conveyed the premises to plaintiffs. **Held, that** a bar by limitations to three-fourths of the land cannot be based on the deed of the third daughter made in 1898, and continuous possession thereafter by defendant, because that deed conveyed only a one-fourth interest, and the widow did not die until 1923, and therefore the statute did not run against the remaindermen who had not conveyed to defendant before her death.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2853, p. 878, n. 82. **Deeds,** 18 C. J., Section 254, p. 284, n. 78. **Descent and Distribution,** 18 C. J., Section 170, p. 895, n. 15. **Estoppel,** 21 C. J., Section 248, p. 1242, n. 92. **Evidence,** 22 C. J., Section 1570, p. 1177, n. 49.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

REVERSED AND REMANDED.

*Hostetter & Haley* for appellants.

(1) The widow's rights in a homestead are governed by the law in force at the time of the death of the husband owning it. Register v. Hensley, 70 Mo. 189; Burgess v. Bowles, 99 Mo. 543; Ailey v. Burnett, 134 Mo. 313; Davidson v. Davis, 86 Mo. 440; Bogart v. Bogart, 138 Mo. 419. (2) A husband cannot by will deprive his wife of the homestead. It is an estate, which prior to the 1895 amendment to the homestead law, vested in her for life. Sec. 5439, R. S. 1889; Kaes v. Gross, 92 Mo. 658; Rockley v. Rockley, 97 Mo. 76; Bogart v. Bogart, 138 Mo. 419; West v. McMullen, 112 Mo. 411; Kleimann v. Gieselmann, 114 Mo. 437; Schorr v. Etling, 124 Mo. 42; Regan v. Ensley, 283 Mo. 306. (3) A conveyance by husband's sole deed of a homestead tract does not deprive his widow of her homestead estate and if the husband's sole deed is to a tract larger than the statutory homestead then it is valid only as to the excess. Growney v. O'Donnell, 272 Mo. 167. (4) Adverse possession of homestead tract does not operate so as to start the running of the Statute of Limitation against the remainderman until the termination of the life estate by the death of the widow. Falvey v. Hicks, 286 S. W. 389; Hall v. French, 165 Mo. 430; Dyer v. Whittler, 89 Mo. 81; De Hatre v. Edmonds, 200 Mo. 246, 10 L. R. A. (N. S.) 186; Powell.v. Bowen, 279 Mo. 280; Graham v. Ketchum, 192 Mo. 15; Carr v. Barr, 294 Mo. 673; Case v. Sipes, 280 Mo. 110; Willis v. Robinson, 291 Mo. 650; Wells v. Egger, 303 Mo. 26. It was not necessary

for the widow to actually occupy the homestead estate, thus vested in her by the statute, in order to preserve her rights thereto. She could rent it or she could sell it outright as was done in the instant case. Hufschmidt v. Gross, 112 Mo. 649; West v. McMullen, 112 Mo. 411; Moon v. Mansfield, 286 S. W. 355. (5) The deed from Mrs. Madden (the devisee of the fee) purported to convey only an undivided one-fourth interest in the 110 acres. The trial court was not authorized to expand the quantum of interest conveyed by her from one-fourth to four-fourths, even though there should have been evidence to support the conclusion reached by the court that it was her intention to convey the whole title. No reformation of the deed was sought by the pleadings. Consequently, the deed should be construed in accord with the plain, ordinary meaning of the language used; in other words, the meaning of a deed is to be gathered and determined, as is often said, from within the four corners of the instrument. Howell v. Sherwood, 242 Mo. 513; Mott v. Morris, 249 Mo. 137; Heady v. Hollman, 251 Mo. 632; Sims v. Brown, 252 Mo. 58; Garrett v. Wiltse, 252 Mo. 699; Warne v. Sorge, 258 Mo. 162; Nations v. Spence, 235 S. W. 1064; Owen v. Trail, 302 Mo. 292; Milligan v. Balson, 214 Mo. App. 627; Inlow v. Herren, 306 Mo. 42. (6) There is no element of estoppel in the instant case. Where the facts are known to both parties, or where they have equal means of knowledge there can be no estoppel. Laughlin v. Wells, 283 S. W. 992; Wood v. Oil & Refining Co., 274 S. W. 900. Besides, estoppel is an affirmative defense and must be pleaded in order to be available. Avery v. Southern Railroad Co., 113 Mo. 561; Laughlin v. Wells, 283 S. W. 992; Bray v. Marshall, 75 Mo. 327; Noble v. Blount, 77 Mo. 235; Messersmith v. Messersmith, 22 Mo. 372.

*Murphy & Benning* and *Ras Pearson* for respondent.

(1) The homestead law does not apply to the facts in this case. The homesteader did, by will undertake to cut this widow out of all interest in and to this land; the will was duly filed for probate and probated; the widow at no time thereafter took steps to renounce or to set aside the will; she filed no election; she made no protest; she did not ask for homestead or dower; under these conditions these appellants cannot thirty-three years after this will was probated and after the widow's death, come in and force a homestead on her. (2) Sarah Madden ''intended to and did convey all her interest as heir of Peter Boudinier, deceased, in and to the whole tract.'' 18 Cyc. 252, secs. 197 and 199; 2 Devlin on Deeds (3 Ed.) sec. 1012; Walker v. Garner, 258 Mo. 494; Jamison v. Fopiano, 48 Mo. 194; Wells v. Wells, 279 Mo. 34, 213 S. W. 831; Inlow v. Herrin, 267 S. W. 898; Garrett v. Wiltse, 252 Mo. 708; Eckle v.

Ryland, 256 Mo. 424, 165 S. W. 1038. (3) When the Sippleys received the quit-claim deed from the widow in 1895 they received whatever title the widow had, be it homestead, dower or quarantine. When the Sippleys received the general warranty deed from Sarah Madden on February 8, 1898, they received her title in fee simple. When the lesser estate (the widow's interest) met the greater estate or fee simple title in one and the same person, the lesser estate was swallowed up and merged in the fee simple title. Thus on September 8, 1898, the fee simple title vested in the Sippleys. The Sippleys have been in the adverse possession of this land claiming to own it ever since. From that day the Statute of Limitations began to run. Silvers on Title (1 Ed.) sec. 2, p. 127; Whitaker v. Whitaker, 157 Mo. 342, 172 Mo. 1. (4) The evidence shows that the Sippleys went into the possession of the land in question more than twenty-five years ago; that they went into possession under color of title, to-wit: warranty deeds from "all the heirs of Peter Boudinier, deceased, conveying all their interest as heirs of Peter Boudinier, deceased, agreeing to warrant and defend the title to them;" that they have retained the possession thereof against the world claiming to own the whole tract. This possession under these conditions should and does defeat any recovery on the part of the appellants.

GRAVES, P. J.—This suit was brought in the Circuit Court of Pike County on August 24, 1923, by J. H. Haley and J. D. Hostetter against William H. Sippley.

The petition is in two counts, the first to quiet title, and the second in ejectment for a three-fourth interest in one hundred and ten acres of land in Pike County, by particular description given in the petition. The answer is a general denial, coupled with a claim of ownership, admission of possession, and a plea of the ten-year Statute of Limitations based upon adverse possession. The reply is a general denial.

A jury was waived and the court upon the request of the plaintiff made a separate finding of facts and conclusions of law. The finding of facts by the learned trial court is:

"The court finds the common source of title to the real estate described in the petition is Pierre Arsene Boudinier; that said Boudinier died testate in Pike County, Missouri, in the year 1893, at his home on the land described in the petition, consisting of 110 acres, which he occupied as his homestead with his family at the date of his death. He was survived by his widow, Mary Boudinier, and his children, Bollivar Boudinier, and his daughters, Sarah Madden, Sylvia Boudinier, Flora Boudinier. He left a last will of which the following is a copy:

" 'To all to whom these presents concern.  Salute—

" 'Know you that I Pierre Arsene Boudinier, domiciled in Township 53 of Pike County, State of Missouri; do bequeath will and donate at the expiration of my existence all my possessions and belongings in this wise to be devised as follows, to-wit:

" 'To my son Bollivar Boudinier the sum of one dollar taken out of my estate.

" 'To my daughter Flora Boudinier the sum of one dollar in lawful money, Ibs Dem.—

" 'To my daughter Sylvia Boudinier the sum of one dollar out of my belongings, and finally

" 'To my daughter Ceres Boudinier spouse of George Madden and her heirs the residue of all that shall be left of my property, after having paid the three persons above mentioned one dollar apiece.

" 'Done and written the 31st day of July, 1893.

" 'PIERRE ARSENE BOUDINIER.

" 'And attested by &#125;
  Rebecca Madden &#125;

" 'Lizzie Browning Attest 31st of July, 1893.

" 'We, Rebecca Madden and Lizzie Browning, widow of Charles Browning, domiciled in Pike County, Missouri, attest and certify that we know personally Pierre Arsene Boudinier to be of sound mind and body, and that he wrote the will and testament and signed it in our presence.

" 'REBECCA MADDEN<br>" 'LIZZIE BROWNING.'

"Will Probated August 23rd, 1894.

"Said widow and children continued in the occupancy of said real estate until about the year 1895, when the widow, Mary Boudinier, for the consideration of $300, sold all of her estate and interest, as widow, in said real estate to William Sippley and his brother, Lymann Sippley, by her deed dated September 16, 1895, and duly recorded in the office of Recorder of Deeds in Pike County, Missouri. Shortly after the sale of her interest in said real estate she left the State of Missouri and moved with her minor child, Sylva, to the State of Washington, where she continued to live continuously thereafter until the date of her death in May, 1923; that said will was duly probated on August 23, 1894, in the office of the Probate Court of Pike County, Missouri.

"On September 14, 1897, Bollivar Boudinier, Sarah Madden and George Madden, her husband, and Flora Boudinier, filed a partition suit in the Circuit Court of Pike County, Missouri. requesting the partition and division of the real estate described in the petition herein, in which suit Sylva Boudinier, then a minor, and William H. Sippley, the defendant in  this cause, and Lymann Sippley, his

brother, were made parties defendant; that process was served on said defendant by order of publication made in a newspaper printed and published in the town of Louisiana, Pike County, Missouri; that in said suit the plaintiffs therein each claimed in their petition an undivided one-fourth each in said real estate, and alleged in their petition that the defendant, Sylva Boudinier, owned an undivided one-fourth thereof, and that defendants, William H. Sippley and Lymann Sippley, together owned the interest of the said Mary Boudinier, widow as aforesaid of Pierre Arsene Boudinier; said partition suit never came to trial so far as the records of the Circuit Court of Pike County, Missouri, show—original papers cannot be found. This partition suit was dismissed in the Pike County Circuit Court on the —— day of ————, 1897. Costs paid by the son, Bollivar Boudinier. That plaintiffs in said partition suit claimed their said interests as heirs at law of Pierre Arsene Boudinier, deceased, and claiming a fee simple estate share and share alike, subject to the life estate of their mother, Mary Boudinier, then owned by defendants in said partition, William H. and Lymann Sippley by purchase from the said Mary Boudinier.

"That on the 8th day of February, 1898, and very shortly after the dismissal of said partition suit, Sarah Madden and George Madden, her husband, executed to William H. Sippley and Lymann Sippley the instrument of writing called a general warranty deed, which was offered and read in evidence and recorded in Book 113 at page 136 of the deed records of Pike County, Missouri.

"That on the 7th day of February, 1898, said Bollivar Boudinier and Nettie Boudinier, his wife, and Flora Boudinier executed and delivered to William H. Sippley and Lymann Sippley, the following instrument of writing called a general warranty deed, which was offered and read in evidence and recorded in Book 113, page 135, of the deed records of Pike County, Missouri.

"On July 13th, 1901, Sylva May Raber (*nee* Boudinier), and John Raber, her husband, executed and delivered the following instrument of writing to said William H. Sippley and Lymann Sippley, which was offered and read in evidence, recorded in Book 122 at page 53 of the deed records of Pike County, Missouri.

"On the 12th day of December, 1913, said Lymann Sippley died intestate, leaving no lineal heirs, but left as his heirs his brother, William H. Sippley, and his sister, Clara M. Oldfield; and that Clara M. Oldfield and her husband conveyed her interest in the land in controversy to William H. Sippley, by deed dated the 31st of March, 1914, in said 110 acres of land; that on the 21st day of August, 1823, Sarah Madden (*nee* Boudinier) and George Madden, her husband, executed and delivered an instrument of writing called 'A

quit claim deed' to J. H. Haley and J. D. Hostetter, plaintiffs herein, for a consideration of $100.

"That at the time of the death of Pierre Arsene Boudinier, said land was open and being cultivated to annual crops or pastured, improved with a dwelling house, outbuildings adjacent thereto, and enclosed with a fence, and that upon his death his widow and children occupied said premises openly, visibly and continuously until their possession and occupancy passed to said William H. Sippley and Lymann Sippley on the 16th day of September, 1895, since which date the defendant, William H. Sippley has been in the open, exclusive, adverse, notorious and continuous possession of all of said land cultivating, claiming and using the same as his own for a period of more than twenty years consecutively prior to the institution of this suit; and that William H. Sippley is in possession of all the real estate described in plaintiff's petition herein."

An insight into the way the court viewed the case, may be gathered from the conclusions of law. These read:

"CONCLUSIONS OF LAW.

"FIRST. That the said will of Pierre Arsene Boudinier was duly probated and established, and the legal effect of said will was to vest the title of all of said 110 acres of land in his daughter, Sarah Madden, according to the terms of said will, standing by itself, subject to the payment of a small bequest therein made to other children named therein.

"SECOND. That Sarah Madden (*nee* Boudinier) is by her act and conduct in voluntarily becoming a party tenant in common with other plaintiffs and defendants in the partition suit filed in the Circuit Court of Pike County, Missouri, in the year, 1897, and solemnly of record praying for a sale and partition of said land, to which action the defendant herein was a party, voluntarily waived and abandoned any and all claim and estate she had under and by virtue of said last will of her father, and especially is this true on account of the further acts and conduct of the said Sarah Madden when approached by William H. Sippley, the defendant herein, for the purchase of said land from her or all of her interest in said land, she refused to sell her interest in said land to him until he had purchased the interests of the other heirs of said Pierre Arsene Boudinier in said real estate and in directing and requesting said William H. Sippley to first buy the interests of Bollivar Boudinier and Flora Boudinier, her brother and sister, in said land, and that she would sell him her interest in said land; that by such acts and conduct on the part of said Sarah Madden, she is now forever barred and estopped from laying any claim or interest in said land.

"THIRD. That the legal effect of the deed executed by Sarah Madden, and George Madden, her husband, was to convey by warranty

deed the whole of the title and estate of the said Sarah Madden in said land; *that the terms of the deed show that it was the intention of the said grantor, Sarah Madden, to convey absolutely her whole entire interest and estate in said land to William H. Sippley and Lymann Sippley.*

"FOURTH. That by reason of the execution and delivery of a said warranty deed, conveying the whole interest of said Sarah Madden in said real estate to the defendant herein and his brother Lymann, on the 8th day of February, 1898, the defendant, as against any claim of the said Sarah Madden, has ever since said date been in the open, exclusive, notorious, adverse and continuous possession, use and occupancy of the whole of said land, covering a period of 26 years consecutively, and that plaintiffs who claim under said Sarah Madden are barred from the right of recovery herein by the running of the Statutes of Limitation, which is pleaded as a defense herein.

"It therefore follows that the title to said real estate is in the defendant, William H. Sippley, and that he is entitled to the possession and occupancy of said premises."

As indicated, supra, the judgment was for defendant, and plaintiffs have appealed. The above, in a general way, outlines the case, but in determining the question as to whether or not the trial court's findings have substantial support in the evidence, further detail will be given in the course of the opinion. Appellants say that the facts are not seriously controverted. It is largely the application of the law to the facts of which they complain.

I. The status of the case should first be fixed. The issues made by the pleadings make the case one at law. The findings of fact of a trial court setting as a jury, as here, if based upon substantial evidence, are conclusive of the facts. These actions to quiet title may **Findings.** be at law, or may be in equity, according to the issues made, and when at law, the findings of the court are in the same catagory as the findings of a jury in a law case. [Hamilton v. Boggess, 63 Mo. l. c. 251; St. Louis v. Railroad, 272 Mo. l. c. 85; Wiley v. Harlow, 274 Mo. l. c. 175.] The cases are numerous, but the above will suffice to rule the point. We have left, among other things, the duty to determine whether or not the findings *nisi* are supported by substantial evidence.

II. To eliminate further rubbish from the present record of the case, we note the second conclusion of law reached by the learned trial judge. This is based upon the doctrine of estoppel *in pais*. The trouble lies in the fact that the pleadings raised no issue of estoppel **Estoppel.** *in pais.* Just what the effect of this conclusion of law had upon the ultimate conclusion reached in the case we do not know. There is evidence in the record which bears upon es-

toppel *in .pais* both as to the Maddens and the plaintiffs.. For the purpose of this point a detail of the facts is not needed. Estoppel was not pleaded. Such defense is an affirmative defense, and must be pleaded. [Bray v. Marshall, 75 Mo. 1. c. 330; Noble v. Blount, 77 Mo. 1. c. 242; Avery v. Railroad Co., 113 Mo. 1. c. 565; Grafeman. Dairy Co. v. Northwestern Bank, 290 Mo. 1. c. 332; Laughlin v. Wells, 283 S. W. 990.]

We shall, under the circumstances, proceed to determine the case under the issues made by the pleadings. We shall express no. opinion as to the sufficiency of the evidence tending to show estoppl. by acts *in pais.* The case may come here later, when the question might be' a live and valid issue. What we now rule is that the question was not an issue under present pleadings.

III. By his findings of fact we have the record showing a conveyance from Sarah Madden and husband to the two Sippleys. Such

**Conveyance: All Interest: One-Fourth.** deed, as to the interest conveyed, says: "all interest as heirs of Peter Boudinier, deceased, to-wit: an undivided one-fourth interest in and to the land described as follows:" (Here follows description of the land.) In fact the four children use this same language in their respective deeds. All the deeds were evidently drawn by the same person.

By the third conclusion of law, supra, the court declared the legal effect of the Madden deed to be a conveyance of all the interest the Maddens had in the land. Of this the plaintiffs bitterly complain.

By 'the fourth conclusion of law, the court, proceeding on the theory that the Madden deed conveyed all the Madden interest in the land, the Statute of Limitations began to run as of the date of said deed, and the defendant had acquired title by open and notorious adverse possession for a period much longer than the requisite ten years, i. e., twenty-six years. If the court has rightly construed the deed from the Maddens of date February 8, 1898, then the adverse possession follows. Plaintiffs contend that the deed only conveys an undivided one-fourth interest, and that as Mrs. Madden, as legatee, had the full interest, subject to the widow's life estate, she was left with a three-fourths interest, subject to the life estate of the widow, which life estate had been conveyed to the Sippleys, and that she as remainderman, could bring no action until the life estate ceased to exist, which was upon the death of the widow, in 1923. In this way. plaintiffs say that defendant acquired no title by adverse possession. If, as a fact, this deed conveyed all the Mrs. Madden interest, as legatee under her father's will, then the life estate and the remainder in fee became merged in the Sippleys on February 8, 1898, and thereafter they were possessed of the whole estate in fee simple. Title by adverse possession becomes a side issue in the face of a record title possessed by the parties claiming also by adverse possession.

317 Mo. Sup.—33.

It should be noted that, excluding the matter of estoppel *in pais,* which we have excluded because the defense was not pleaded, the trial court holds as a matter of law that the Madden deed conveys all of Mrs. Madden's interest. The court also holds in the first conclusion of law, that the will gave to Mrs. Madden a title to all of the 110 acres of land. He meant, of course, that such would have been Mrs. Madden's interest after the death of the mother, if she had not conveyed the remainder interest prior to the mother's death, or she had not declined to take under the will. It is evident that the court's declaration of the legal effect of the Madden deed should be seriously considered. First, what shall we consider in passing upon the question? If the deed is unambiguous, the only things for consideration are those which appear within the four corners of the instrument. In other words, extraneous evidence is not admissible, and should not be considered. The third conclusion of law proceeds upon this theory of the law. It reads:

"That the legal effect of the deed executed by Sarah Madden and George Madden, her husband, was to convey by warranty deed the whole of the title and estate of the said Sarah Madden in said land; *that the terms of the deed show that it was the intention of the said grantor, Sarah Madden, to convey absolutely her whole entire interest and estate in said land to William H Sippley and Lymann Sippley.*"

In finding the intent from the terms of the deed itself, we think the court was right. Whether he was right in the conclusion reached is another question. The description of the interest conveyed is not ambiguous. True there is a general description, "all interest as heirs of Peter Boudinier, deceased," which is followed by a more particular description, thus: "to-wit: an undivided one-fourth interest in and to the land described as follows," but these words are plain and easily understood. If Mrs. Madden was refusing to claim under the will, but was claiming as an heir, rather than a legatee, this description would describe her interest exactly. The deed recites "all interest as heirs," and says nothing about interest as devisee. The deed would tend to show that Mrs. Madden was not claiming under the will, as legatee, but as heir purely. But this is branching out from the main question. Does this deed mean that Mrs. Madden conveyed all that the will gave her, or does it mean that she conveyed one-fourth interest in the remainder? This we determine by the face of the instrument. It says first "all interest," and then explains what is meant by "all interest" by the use of the qualifying clause, "to-wit: an undivided one-fourth interest in and to the land described as follows."

These two descriptions are not conflicting. The latter defines in exact terms what is meant by "all interest." The grantors, in effect say, "We convey all interest as heirs of Peter Boudinier, which

interest is an undivided one-fourth interest." The general terms are followed by the more definite terms contained in the last clause of the description. In other words the last clause of the description defines what is meant by "all interest." It limited the interest conveyed to "an undivided one-fourth interest." So if we exclude all extraneous facts, and gather the intent of the grantor from the instrument itself, Mrs. Madden conveyed "an undivided one-fourth interest," and no more. In the construction of all contracts which are not ambiguous, the intent must be gathered from the contract itself. Deeds are contracts and subject to this rule. It is only when ambiguity appears that extraneous evidence is admissible. The trial court took this view of the matter, because in his third conclusion of law, he declared "that the terms of the deed show that it was the intention of said grantor Sarah Madden to convey absolutely her whole interest in said land." The terms of the deed show no such intention, but on the contrary do show an intention to convey "an undivided one-fourth" interest in 110 acres of land. The words are so plain that we should be relieved from discussing rules of construction. We shall note one rule, however. The rule is that general words of description may be modified and restricted by particular words following them. [Guffey v. O'Reiley, 88 Mo. l. c. 423; Carr v. Luckland, 112 Mo. l. c. 458; DePaige v. Douglas, 234 Mo. l. c. 89.] The first and last of the foregoing cases involve deeds. In the Guffey case, supra, Sherwood, J., said: "The rule is well settled that 'general words of description may be modified and restricted by particular words following them.' [Jones on Chat. Mort., sec. 377; Smith v. McCullough, 104 U. S. 25; Freeman on Judg., sec. 155.]" In the DePaige case, supra, Lamm, J., said: "Furthermore, it is settled law that general words of description may be modified and restricted by particular words following them. [Guffey v. O'Reiley, 88 Mo. l. c. 423.]"

We note from the record, that the court admitted some testimony, over the objection of plaintiffs, for the purpose of showing an intent upon the part of Mrs. Madden to convey all the interest she had. Also the same may be said of evidence tending to show estoppel by acts *in pais.* No evidence was admissible to show the intent of Mrs. Madden, because the language of her deed is unambiguous, and from the deed itself must be gathered her intent. No evidence of estoppel by acts *in pais* was admissible, because no such defense was pleaded. This narrows very much the real questions in the case.

IV. By our system of elimination, supra, there is not much left in the present case, although it has been full of interesting questions, and if it should reach here a second time other and more interesting questions may follow.

Upon the present record the learned trial judge erred in passing upon the question of estoppel *in pais*. As said, supra, we do not

**Intent.** know what effect this might have had on his final conclusions. He seems to have been of the opinion that the parties were estopped. There was also error in admitting any evidence for the purpose of showing an intent upon the part of Mrs. Madden to convey the whole estate. Her intent, as ruled above, must be drawn from within the four corners of her deed. Any finding that she intended to convey the whole estate would not be sustained by substantial evidence. The deed is the only competent evidence upon her intent. It shows no intent to convey the whole. Then lastly the trial court erred in ruling that the deed, by its terms, showed an intent to convey the whole interest in the 110 acres of land. The writing shows no such intent. For these errors the judgment is reversed, and the cause remanded. All concur.