J. D. Wood, Respondent, v. L. P. Utter et al.; Appellants.—77 S. W. (2d) 832.

Kansas City Court of Appeals. January 7, 1935.

310

*Gerlach & Gerlach* and *Culver & Phillip* for respondent.

*Groves & Watkins* and *Fred M. Wanger* for appellants.

REYNOLDS, C.—This is an action by plaintiff against the defendants on a written contract executed by defendants to plaintiff October 19, 1931, guaranteeing plaintiff against any loss from/on his deposit of $6,000 in the Peoples Bank of Westboro, provided that such deposit should be left with such bank at least three weeks from that date, on which deposit so guaranteed plaintiff claims to have sustained a loss of $3310.18. From a judgment rendered for plaintiff for $3,433.49 on January 20, 1934, defendants, after an unsuccessful motion for a new trial, appeal.

The cause was instituted in the Circuit Court of Atchison County on June 29, 1933, and transferred upon change of venue to the Circuit Court of Buchanan County, where it was tried in Division 2 thereof with the result above stated.

It appears that, on October 19, 1931, the plaintiff was a customer of and had on deposit to his credit with the Peoples Bank of Westboro

the sum of $6514.97, subject to check; that, at such time, the defendants were the directors of said bank and the defendant Utter, in addition to being a director, was also the cashier and, apparently, the managing officer of such bank.

Upon said date, the defendant Utter, being desirous of the retention of plaintiff's deposit in the bank for a short while, or at least the greater portion thereof, arranged with the plaintiff that, upon his agreement to leave at least $6,000 of said deposit in the bank for at least three weeks from that date, a written guaranty against loss on his deposit for such sum would be given him by the defendants; and, in pursuance of such agreement, the plaintiff having signified his willingness to leave such amount for at least such time and to accept such guaranty, the written instrument sued upon was prepared by defendant Utter, executed by him and the other defendants, and delivered to plaintiff as of said date, who thereupon accepted the same as such guaranty.

The guaranty is as follows, to-wit:

"Westboro, Missouri
"October 19th, 1931

"We, the undersigned, Directors of the Peoples Bank of Westboro, hereby guarantee J. D. Wood of Westboro, Missouri, against any loss from/on his deposit of Six Thousand Dollars now in the said Peoples Bank of Westboro, provided left on deposit at least three weeks, from this date.

"L. P. UTTER,
"C. A. McCOLL,
"Signed          "WM. BREDENSTEINER,
"W. B. BANKS,
"HENRY KLUTE."

The plaintiff thereafter left his said deposit in at least said sum of $6,000 to the credit of his account in said bank, not only for the period of three weeks from said date but until December 7, 1931; and, in the meantime, checked against the surplus beyond $6,000 in said account; and, on said date of December 7, 1931, reduced such deposit below $6,000. He thereafter continued his account with said bank, supplementing it with additional deposits and diminishing it by checks drawn until December 22, 1932, when the bank failed and closed its doors and its assets were placed in the hands of the Finance Commissioner of the State of Missouri for liquidation, with Frank H. Hopkins as special deputy commissioner in charge, at which time there remained to plaintiff's credit in said account the sum of $3310.18. The lowest amount of such account to plaintiff's credit at any time, subsequent to October 19, 1931, appears to have been $3301.44 on June 20, 1932.

The plaintiff, in his petition, alleged the making of the agreement for the guaranty and alleged that it was to the effect that, if plain-

tiff would not withdraw $6,000 of his deposit in the bank at that time for at least three weeks from October 19, 1931, the defendants would guarantee plaintiff against any resulting loss on account of said deposit. It further alleged that, in pursuance thereof, the written guaranty sued upon was executed and delivered to him; that, by reason of such agreement, he left his deposit in said bank in said sum for a period of more than three weeks from said date; that, thereafter, prior to the closing of said bank and the placing of its affairs in the hands of the Finance Commissioner for liquidation, there was paid to him all of said deposit except a balance thereof in the sum of $3310.18; that plaintiff had demanded said balance in said sum of the Commissioner of Finance in charge but that said commissioner had refused payment; that said bank is wholly insolvent and has no money, property, or assets which may be applied to the payment of said balance and, by reason thereof, plaintiff has suffered the loss of said sum of $3310.18; that plaintiff had demanded the payment of said sum of defendants and that they had repudiated said contract since the closing of said bank and had denied all liability on said contract. The petition prayed judgment for said sum against defendants, with interest from October 19, 1931.

The defendants, by their answer, admitted, in substance, that the Peoples Bank of Westboro was a banking corporation; that, on October 19, 1931, the defendants were the directors thereof; that, on December 22, 1932, said bank closed its doors and its affairs were placed in the hands of the Commissioner of Finance for the State of Missouri; that Frank H. Hopkins, mentioned as such in the petition, was placed in charge as the special deputy commissioner. Defendants denied generally all other allegations of the petition.

The defendants, by way of further answer and defense, in substance, admitted the signing of the agreement set forth in the petition and admitted that plaintiff, at the time it was signed by them, had a checking account in said bank, the balance to his credit thereon, upon said date, being the sum of $6514.97. The answer alleged that, upon said date, plaintiff demanded the payment of said balance in said sum but, by reason of certain local financial conditions prevailing—of which plaintiff was alleged to be aware—the officers of said bank, at such time, informed plaintiff that, if he should withdraw said balance at said time, it would so diminish the cash reserve required to be kept by said bank that it would no longer be able to operate and would be forced to place its affairs in the hands of the State Finance Commissioner; that it was thereupon agreed between plaintiff and defendants that, if plaintiff would permit $6,000 of said deposit to remain on deposit in said bank, defendants would guarantee plaintiff against any loss up to $6,000 by reason of the retention of a deposit of at least $6,000 in said bank so long as said deposit of $6,000 was allowed to remain therein, provided

that it should so remain for not less than three weeks thereafter; that plaintiff, at such time, fully understood the necessity for the retention in said bank of said sum, the emergency existing, and the benefit intended to result to the said bank thereby; that said written contract sued upon by plaintiff was signed by them as a result of said understanding and arrangement between themselves and plaintiff but that, by mutual mistake and oversight of the parties and by error of the scrivener and contrary to the true intention of the parties as the same was then understood, there was omitted from said writing and agreement a provision that said agreement should continue only so long as said deposit was not reduced below the sum of $6,000; and that the contract as signed, by reason of such omission therefrom, does not fully recite the true terms of the agreement between the parties.

Defendants, by their answer, tendered, as a further defense, that plaintiff failed to maintain his deposit at the sum of $6,000 as required by the written contract, set out in the petition, but, on December 7, 1931, reduced said deposit below the sum of $6,000 by withdrawal of funds therefrom by check, by reason whereof said contract of guaranty was finally determined.

The defendants, by their answer, further sought a reformation of said written contract as signed by them so as to make it recite that it should continue in effect only so long as said account was not reduced below the sum of $6,000, in accordance with the true intent of the parties thereto as alleged in such answer.

Other parts of the answer, it is deemed immaterial to set out here.

The reply substantially denied all the allegations of new matter in the answer, both specifically and generally.

There is evidence appearing in the record, introduced upon the trial, tending to show the execution of the contract, the negotiations therefor, the subject-matter thereof, the relation of the parties thereto, the circumstances under which it was made and reduced to writing, and the circumstances surrounding the parties leading thereto. There is also evidence appearing in the record touching the issues raised by defendants' answer respecting the omission of certain matters from the contract as written, through mutual mistake of the parties and through mistake of the scrivener, which the parties were alleged to have intended to incorporate therein and upon which defendants' plea for its reformation, set out in the answer, was based.

By agreement of the parties, a jury was waived; and all issues, both legal and equitable, were tried by the court.

It also appears from the evidence in the record that, at the time this suit was instituted and at the time of the trial, the liquidation of the affairs of said bank had not been completed but was still in process and that the said Frank H. Hopkins was still in charge of its affairs as special deputy commissioner.

The only evidence as to the condition of the affairs of the bank was in the nature of opinion evidence given by Hopkins, the deputy commissioner in charge, to the effect that there would be realized upon the assets of the bank about $50,000 and that preferred claims had been allowed against the bank amounting to between $39,000 and $40,000. There was no evidence regarding the probable cost and expense of liquidation; common claims, if any, allowed or to be allowed; or other preferred claims in abeyance or yet to be presented. No basis was shown for determining whether plaintiff would be unable to recover anything from his deposit from the assets or whether he would recover the same in full or in part only and, if in part only, what amount would be recovered.

A copy of plaintiff's account, beginning with date of October 17, 1931, showing a balance on said date of $6529.27 to his credit and covering all dates subsequent thereto to December 22, 1932, showing the deposits made to said account and the withdrawals therefrom following October 17, 1931, to and including December 21, 1932, appears in the evidence.

At the close of all the evidence, defendants requested declarations of law identified respectively as A and B, which were by the court refused. Such requested declarations were as follows:

"A. The court declares the law to be that under the pleadings, the law and the evidence in this case, the finding and judgment of this court must be in favor of the defendants.

"B. The court declares that under the law and the evidence of this case, the contract of guaranty mentioned in evidence terminated when the deposit of plaintiff in the Peoples Bank of Westboro, Missouri, was reduced below the sum of six thousand dollars."

### OPINION.

The defendants upon this appeal complain of the action of the trial court in refusing their requested declarations of law, A and B, at the close of the evidence.

It will be noticed that declaration A is in the nature of a demurrer directing a finding and judgment for the defendants and declaration B is to the same effect.

The latter is covered by declaration A, and the two may be considered and disposed of together.

The defendants base their complaint upon the two following propositions: (a) that the guaranty provided by the written contract sued upon continued to apply and be effective, after the expiration of three weeks from October 19, 1931, only so long as plaintiff's deposit in at least the full sum of $6,000 remained in the bank and, upon its being reduced below said sum by withdrawals therefrom by check or otherwise, the guaranty terminated, became ineffective, and ceased to apply; (b) that, under the evidence, plaintiff failed to show the actual amount of the loss, if any, sustained by him on his deposit by reason of his having left it in the Peoples Bank of Westboro.

Proposition (b) does not, of course, apply to the complaint of the court's failure to give declaration B but only to the complaint of its failure to give declaration A, while proposition (a) applies to the complaint, as made, of the court's action with respect to both of said declarations.

Proposition (a) will be first considered and disposed of.

■ The defendants, while now contending for the construction of the contract as above indicated, by their answer say that there was omitted from the contract as written a provision that the agreement therein set out would continue only so long as plaintiff's deposit in the bank was not reduced below $6,000 and that the contract as written and sued upon does not, as the same reads, by reason of such omission, fully recite the true terms of the contract actually entered into between the plaintiff and defendants; and defendants seek a reformation of the contract as written upon the ground that the provision alleged to have been omitted was omitted by mutual mistake and oversight of the parties and by error of the scrivener, contrary to the true intention of the parties as the same was then and there conceived and agreed.

■ Parties are ordinarily bound by their pleadings and the positions taken therein, and they cannot assume positions inconsistent therewith upon the trial. There was no claim by defendants in their answer that the contract as written was uncertain in its terms or meaning or was ambiguous in intent or purpose or that any latent ambiguity was suggested upon the face thereof by reason whereof it did not fully recite the agreement made but only that the provision noted was, by mistake and oversight of the parties and by error of the scrivener, omitted. Having alleged in their answer that the contract does not contain the provision that the agreement therein set out would continue only so long as plaintiff's deposit in the bank was not reduced below $6,000 and that the contract as written and as it reads does not fully recite the true terms of the contract actually entered into by reason of the omission therefrom of such provision and having gone to trial in the court below upon such answer, the defendants were in no position in the court below to claim against the allegations of their answer; nor are they to be permitted here to reverse the position taken by them in their answer and claim that the intent that the agreement set out in the written contract would continue only so long as plaintiff's deposit in the bank was not reduced below $6,000 is expressed by its terms as written and as it now reads or is to be gathered therefrom and that it should be so construed. They are bound by the position taken in their answer. [Bay v. Wank, 215 Mo. App. 153, 255 S. W. 324; Smoot v. Judd, 184 Mo. 508, l. c. 517, 83 S. W. 481; Jonesboro, Lake City & Eastern R. R. Co. v. United Iron Works Co., 117 Mo. App. 153, l. c. 164, 94 S. W. 726; Leavel v. Johnston, 209 Mo. App. 197, l. c. 209, 232 S. W. 1064.]

■ Besides, the contract as written is complete and clear upon its face. The defendants thereby agreed to guarantee plaintiff against any loss on his deposit of $6,000 in the bank provided it was left there three weeks from that date. That was the only condition attached. Clearly, he could leave it, or any part thereof, longer; and the guaranty would extend to and apply to it. The guaranty extended and applied until all of said deposit was withdrawn. There was no limitation as to how or in what sums or when it was to be withdrawn, except that none of it was to be withdrawn until three weeks from October 19, 1931. After the expiration of that time, plaintiff could withdraw all or any part thereof as he pleased; and he was guaranteed against loss as to any part remaining therein, subject to the right of the bank, of course, to pay it over to him at any time it desired. Where a contract is clear, certain, and unambiguous in its terms and intent, there is no need for parol evidence to explain it. It speaks for itself and, in such cases, must speak for itself in the absence of mutual mistake of the parties in its execution or fraud in the procurement of its execution. [Securities Inv. Co. of St. Louis v. International Shoe Co. (Mo. App.), 5 S. W. (2d) 682; Official Catalogue Co. v. Weber Gas & Gasoline Co., 130 Mo. App. 646, 109 S. W. 1071; Kessler v. Clayes, 147 Mo. App. 88, 125 S. W. 799; Lion Match Co. v. Hess (Mo. App.), 253 S. W. 108; Haley v. Sippley, 317 Mo. 505, 297 S. W. 362.]

Of course, if there has been a mistake of the character indicated by the answer, by which some element has, through oversight or inadvertence, been omitted or, in some instances, a mistake upon the part of the scrivener in transcribing it so that the contract as written does not speak the contract as actually made and intended, it may be corrected and made to speak the truth upon a showing of the mistake; and parol evidence may be heard for that purpose, touching the circumstances under which the contract was made, the negotiations of the parties, the circumstances surrounding them leading to the execution of the contract, the subject-matter of the negotiations, the relation of the parties thereto, the purposes and objects sought to be accomplished, and like matters. [Kessler v. Clayes, supra.]

■ Here, the defendants sought a reformation of the contract in question and resorted to parol evidence in an effort to show that a provision to the effect that the guaranty against loss, provided therein to plaintiff on his deposit, would no longer apply when he reduced it below $6,000 had been agreed upon and had, through mutual mistake of the parties, been omitted therefrom and sought to amend the contract by inserting such provision therein. They failed to obtain a decree for such reformation. There is no point made by defendants upon this appeal against the action of the trial court in failing to grant such decree, nor is such action assigned as error.

■ However, defendants, having failed to obtain from the trial

court upon the parol evidence offered for that purpose a decree of reformation, now contend that such evidence, having been admitted without objection upon the trial, may be considered for the purpose of showing that the intention of the parties by the contract sued upon was that the guaranty therein provided should terminate and cease whenever plaintiff's deposit was reduced below $6,000 and should no longer apply; and defendants cite 22 C. J., page 1186, as authority for their contention.

It is undoubtedly true that, when a written contract is ambiguous and uncertain in its terms and the intent of the parties is not to be accurately drawn therefrom, parol evidence of the situation of the parties and the circumstances under which the contract was executed and other extrinsic matters of a like character may be resorted to for the purpose of ascertaining the intention of the parties from the language used; and, from the paragraph of the text cited, it is clearly apparent that it was to such a contract that reference was being made. However, as hereinbefore stated, parol evidence is not available and cannot be resorted to where the contract is complete in itself, certain, and unambiguous in its terms and its intent and purpose may be accurately ascertained and arrived at by giving to such terms their plain and ordinary meaning. [22 C. J., pages 1186-1189.]

Such is the case here. The contract is complete in itself and legally enforceable. It is in no sense uncertain or ambiguous in its terms or in its intent and purpose. No suggestion of any latent ambiguity even beclouds the face thereof. Parol evidence of the circumstances at the time of its execution leading thereto, or of other character, is not for consideration in determining the intent of the parties from the contract as written. Its intent is to be gathered from the plain and ordinary meaning of its terms as expressed. To permit otherwise would be to allow a written contract to be varied and added to by parol under the guise of construction, which cannot be done, except in cases of reformation based upon an omission by mutual mistake of the parties or in instances where the execution of the contract has been obtained by fraud. [Authorities cited, supra.]

If, however, it is true that, having entered the record without objection it became a matter for consideration, as contended by defendants, it must be assumed, upon the record here, that the trial court as the trier of the fact found against defendants' contention as to the contract of the parties shown thereby; such finding is fully supported by the evidence. It did not tend to show the contract contended for by defendants. The written contract strictly followed the verbal negotiations.

It must therefore be held that defendants are wrong as to their contention with respect to proposition (a) and that such proposition cannot be sustained; but upon the other hand, it must be held that,

by the written contract, defendants guaranteed plaintiff against loss of his deposit of $6,000 in the bank so long as it or any part thereof remained therein, provided only that it be left in the full sum of $6,000 with said bank for three weeks from its date, October 19, 1931. There was no error in the refusal of declaration of law A, so far as the grounds relied upon in proposition (a) are concerned; and the court's ruling with reference to declaration B was likewise well made. What is here said finally disposes of declaration B.

■ Defendants' contention that it was error for the court to refuse their requested declaration A, based upon the grounds set forth in proposition (b) that plaintiff had failed under the evidence to show the actual amount of the loss sustained by him upon his deposit and was therefore not entitled to recover; seems to be well made.

The contract does not guarantee against liability but against loss, and the defendants are not liable thereon until actual loss is sustained by plaintiff on his deposit. In 28 C. J. 991, it is stated, "Where the guaranty is one against damage or loss, and not against liability, the guarantor does not become liable thereon until actual damage or loss is sustained by the guarantee." Such proposition seems to be logical and be in accordance with the law as recognized.

It follows that, before plaintiff can recover upon the contract shown, it is incumbent upon him not only to show that he has suffered a loss but to show the amount thereof. He has not done so in this case. It is not sufficient to show the failure of the bank in which the deposit was and to show that it has passed to the Finance Commissioner for liquidation and that plaintiff has been thus temporarily deprived of the use of such deposit in whole or in part; but he must show that he has sustained a permanent loss of such deposit or some part thereof. What loss, if any, has been so sustained by him depends upon whether, from the assets of said bank in liquidation, there will be anything recovered available for the payment to plaintiff of his deposit in full or in part and, if in part only, then what amount of such part would be realized.

Plaintiff framed his petition upon this theory; and he tried his case upon this theory; and, by his petition, he must stand or fall. [Leavel v. Johnston, supra; Jonesboro, Lake City & Eastern Railroad Co. v. United Iron Works Co., supra; Smoot v. Judd, supra; Bay v. Wank, supra; Cole v. Armour, 154 Mo. 333, 55 S. W. 476.] He alleges therein, as his cause of action, that the defendants guaranteed him against any resulting loss on account of his deposit—and that he suffered the loss complained of—and that said bank is wholly insolvent and has no money, property, or assets which can be applied to the payment of his claim or any part thereof and that, in consequence thereof, he has lost said sum of $3310.18.

The evidence does not disclose that said bank is so wholly insolvent that it has no money, property, or assets which can be applied to the

payment of plaintiff's claim, in whole or in part. His claim may not be realized in full therefrom or any material part thereof, but the evidence fails to show that no part thereof may be realized therefrom. Until it be shown with certainty that there will be nothing available for the payment of plaintiff's claim or, if anything is available, until it be shown with certainty the amount thereof, plaintiff's loss cannot be accurately or definitely determined.

██ It is insisted by plaintiff that, by the written contract, the defendants agreed with him that he would not be deprived of his money when it was due and that, if the bank did not pay at that time, they would; that the word "loss," in the connection used, imported such undertaking and must be interpreted as so meaning. However, it is clear from his petition that such is not the interpretation he placed upon it in formulating and stating his cause of action and that he does not in the statement of his cause of action base his right of recovery upon any loss sustained in that sense. The loss he complains of in his petition is that the bank had swallowed up his deposit in its assets and had become insolvent and unable to pay it or any part thereof in any event, by reason of which it had become lost to him. This would not be a mere deprivation or a suspension of his right to use the money in his deposit for a time, but the total loss of it to him for all time; and, not only that; but, giving to the word "loss" its plain and ordinary meaning as it appears in the contract of guaranty, the loss provided against was the total loss to him of his deposit in whole or in part for all time and not the mere suspension of his right to have the same made available to him at sometime. This not only is the true meaning to be ascertained by giving to such word as employed in the contract its plain and ordinary meaning; but such meaning does not conflict with the sense in which it was employed by the parties in their negotiations and understandings leading to the execution of the written contract and merged therein, as appears from the parol evidence in the record. It is in harmony therewith. The written contract was in strict accordance with the parol understanding and agreement merged therein.

██ There, therefore, are no grounds existing upon which to give the meaning to such word as plaintiff now contends for in his brief, if susceptible thereof, by applying the rule that, because such meaning might now be considered to the advantage of plaintiff, it will be so given because defendant Utter wrote the contract, even though plaintiff had not, by the meaning which he gave to it in the statement of his cause of action, deprived himself of the right now to insist on such meaning for it. The authorities cited by plaintiff in his brief in this connection have no application where the terms of the contract are clear and unambiguous and the intent of the parties is to be gathered therefrom by giving to such terms their plain and ordinary meaning, even though written by one of the parties.

When the intent is to be thus clearly ascertained from the contract itself, no rule of construction applies to give some other intent by construction. [Lion Match Co. v. Hess, supra; Kansas City, to Use of Kansas City Hydraulic Press Brick Co. v. Youmans, 213 Mo. 151, 112 S. W. 225.] The word "loss" is not a technical term. It is a word in ordinary use with a well-understood meaning and needs no interpretation or definition and, as used in the contract sued upon, meant the loss of plaintiff's money upon deposit or some part thereof. Even though plaintiff had not given to it the meaning declared upon in his petition, the authorities cited by him in his brief are neither controlling nor persuasive to require or influence giving to it in the contract here in question any other meaning than such as it naturally has and such as is given to it by plaintiff in his petition or to give to it the meaning for which he now contends in his brief. The facts in those cases are entirely dissimilar to the facts here, and they have no application.

Plaintiff insists further that defendants have repudiated the contract and therefore, if he was ever required to resort first to the bank's assets to ascertain his loss, he has been relieved of such requirement and has the right to sue immediately upon such repudiation. However, if the legal proposition involved is as stated by plaintiff, we find no evidence of repudiation of the contract in the record. Defendants admit the written contract to have been signed and executed by them. True, they contend that, as written, it omitted a material element which, if it had been inserted therein, would have materially altered its scope and meaning; and they sought by their answer to have it reformed to include the omitted matter. However, we are not inclined to the view that such amounted to a repudiation of the contract. Further, they not only admitted that the written contract had been signed by them but insisted that their obligation had been discharged thereunder by payment of the bank to plaintiff of the amount of his deposit referred to therein. This claim of payment was upon their theory of the manner in which the checks drawn by plaintiff against his account should have been applied. They contended that such checks should have been charged against the original deposit of $6,000 until satisfied and thereafter against additional deposits subsequently made by plaintiff. Their theory may have been wrong, but it does not amount to a repudiation of the contract in the sense, at least, contended for by plaintiff.

It is further suggested by plaintiff that, if the defendants be required to satisfy his claim upon the theory that the deprivation of his right to check upon and use his deposit is the loss contemplated by the contract, they will thereupon become subrogated to such rights as he has to pursue the assets of the bank and realize upon them and therefore they will not be prejudiced by plaintiff's failure to do so before bringing this suit. However, that may be, such question does

not appear to be here involved; and, in any event, it would not operate as an excusal of plaintiff from ascertaining first the amount of his loss according to the standard set up in the contract and in his petition before proceeding against defendants therefor.

■ It follows that defendants' complaints against the action of the court in the refusal of declaration of law A, as based upon the grounds set forth in proposition (b), are well taken and that it was error, upon the grounds therein stated, to refuse such declaration, for which the judgment below should be reversed and the cause remanded.

■ From the views expressed and the conclusions reached, it is unnecessary to consider other points discussed in the briefs. In fact, defendants, in their reply brief, submit their appeal upon their claim of error in the refusal of declarations of law A and B upon the grounds set forth in propositions (a) and (b) and abandon all other points made.

For the reasons stated, the judgment of the trial court is reversed; and the cause is remanded for trial in harmony with the views herein above expressed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed, and the cause is remanded for new trial. All concur.